[No. 55531-6-I.   Division One.   January 30, 2006.]

MILLER BLACKWELL ET AL., *Appellants*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES ET AL., *Respondents*.

*Darrell L. Cochran* and *James W. Beck* (of *Gordon Thomas Honeywell Malanca Peterson & Daheim, P.L.L.C.*), for appellants.

*Robert M. McKenna, Attorney General,* and *Catherine Hendricks, Assistant,* for respondents.

¶1 GROSSE, J. — Whether a statute provides the foundation for a cause of action depends in part on whether the plaintiff is within the class the statute was enacted to benefit. The statute requiring the Department of Social and Health Services (DSHS) to investigate allegations of child abuse was not enacted to benefit foster parents such as the Blackwells. Thus, the trial court's dismissal of their claim is affirmed.

## FACTS

¶2 Over the years, Miller and Mary Blackwell were foster parents to a number of high-risk foster children with behavioral problems. They believe that one of these children, D.R., stood out. D.R. lived with them for over two years. The Blackwells began talking about adopting D.R., but no formal application or discussions were made.

¶3 In March of 2000, the Blackwells' home contained five foster children, including D.R. Two of these children threatened harm to themselves and others, so at the behest of DSHS, Miller took them to Harborview Medical Center for observation and treatment. There, the two foster children reported that Miller was physically and emotionally abusing them. A doctor at Harborview examined these boys and found no evidence of abuse. However, in normal course, DSHS was notified and an investigation began. During the investigation, two more foster children, including D.R., made abuse allegations. The claims were investigated by Child Protective Services (CPS), specifically, CPS investigator Ivana Rozekova. Rozekova determined the allegation of physical abuse was "founded" as to Miller Blackwell. On July 14, 2000, DSHS sent a letter to the Blackwells informing them of this fact. The foster children were removed from the Blackwell home. On July 17, 2000, the Office of Foster Care Licensing notified the Blackwells that their foster care license was revoked and advised them of the procedure for requesting an administrative hearing to contest the decision.

¶4 After two years of hearings, an administrative law judge (ALJ) issued a decision reversing the finding of physical abuse against Miller Blackwell and reinstating the Blackwells' foster care license. A review judge made revisions to the findings and conclusions of the ALJ but affirmed the reversal of the allegation of physical abuse and also affirmed the reinstatement of the Blackwells' foster care license.

¶5 Thereafter, the Blackwells filed actions against multiple parties, seeking damages for the "negligent investigation" into the abuse allegations. The claims were removed to federal court and consolidated. The parties later agreed to dismiss all claims except for those under state law for negligent investigation by the city of Seattle and the State. The case was remanded to King County Superior Court. There, the city and State moved for dismissal on summary judgment. The trial court granted summary judgment to both. The Blackwells appeal the summary judgment dismissing the State.

## ANALYSIS

¶6 This case presents review of a summary judgment. We engage in the same inquiry as the trial court,[1] and because the claims were dismissed on a question of law, our review is de novo.[2] We will affirm an order granting summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3]

¶7 "The threshold determination in a claim of negligence is the existence of a duty to the plaintiff, which is a question of law."[4] Generally, a claim for negligent investigation does not exist under common law.[5] But statutes may create an exception to the common law. RCW 26-.44.050 requires DSHS to investigate child abuse. It has been recognized that this statutory duty implies a cause of action for "children and parents" for claims of negligent

---

[1] CR 56(c); *Owen v. Burlington N. & Santa Fe R.R.*, 153 Wn.2d 780, 787, 108 P.3d 1220 (2005); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[2] *Owen*, 153 Wn.2d at 787; *Hartley v. State*, 103 Wn.2d 768, 775-76, 698 P.2d 77 (1985).

[3] CR 56(c).

[4] *Pettis v. State*, 98 Wn. App. 553, 558, 990 P.2d 453 (1999) (citing *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 168, 759 P.2d 447 (1988)).

[5] *Pettis*, 98 Wn. App. at 558.

investigation in certain circumstances.[6] These cases were brought by a biological parent of a child, or the child and his/her biological parents. The Blackwells urge this court to extend the duty to foster parents, especially those who claim to be de facto or psychological parents. Specifically, we are asked to determine whether foster parents fall within the ambit of RCW 26.44.050.[7]

¶8 In RCW 26.44.010, the legislature expressed an " 'intent to identify [and protect] a particular and circumscribed class of persons.' "[8] A review of Washington court holdings shows consistency in the determination that under chapter 26.44 RCW, DSHS's duty to conduct a reasonable investigation of allegations of child abuse is owed to a *particular, circumscribed class*: children who are alleged to be abused and their parents. There is no case law supporting the expansion of DSHS's duty beyond biological parents and children.

¶9 A recent case considers whether chapter 26.44 RCW creates a duty to third parties or parties other than a biological parent and child.[9] There, the director of a school

---

[6] *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 595, 70 P.3d 954 (2003); *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 79-81, 1 P.3d 1148 (2000); *see also Lesley v. Dep't of Soc. & Health Servs.*, 83 Wn. App. 263, 273, 921 P.2d 1066 (1966).

[7] RCW 26.44.050 states as follows:

Upon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department of social and health services must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court.

A law enforcement officer may take, or cause to be taken, a child into custody without a court order if there is probable cause to believe that the child is abused or neglected and that the child would be injured or could not be taken into custody if it were necessary to first obtain a court order pursuant to RCW 13.34.050. The law enforcement agency or the department of social and health services investigating such a report is hereby authorized to photograph such a child for the purpose of providing documentary evidence of the physical condition of the child.

[8] *Yonker v. Dep't of Soc. & Health Servs.*, 85 Wn. App. 71, 78, 81-82, 930 P.2d 958 (1997) (quoting *Donaldson v. City of Seattle*, 65 Wn. App. 661, 666-67, 831 P.2d 1098 (1992)).

[9] *Pettis*, 98 Wn. App. at 559-60.

district's licensed day-care facility, who was investigated by DSHS for alleged child abuse, asked this court to extend the duty that is owed to parents and children to child care workers and thus to allow her to bring a claim for negligent investigation against DSHS. The court declined, concluding:

> If the duty of care is to be extended to child care workers, the proper body to make that decision is the Legislature. The state Legislature has thus far declined to do so. In RCW 26.44.010, the Legislature specifically recognized the unique relationship between parent and child and made clear that the State may interfere with that relationship in only the most urgent situations. That legislative intent is inconsistent with extending a duty of care to nonparental relationships. In balancing the need to investigate abuse complaints with the protection of the parent-child relationship, the Legislature acknowledged that a unique relationship exists between parents and their children, and it did not include caretakers within that classification. That balance was not ascribed to other relationships. We hold that the statute as it existed at the time of the investigation[10] provided no duty of care to Pettis.[11]

With regard to foster parents, we hold the same is true.

¶10 The Blackwells argue that they, as foster parents, fit within the scope of the statute. They claim they are within the class for whose benefit the statute was enacted because they are properly characterized as "parent(s), custodian(s) or guardian(s)" as those terms are used in RCW 26.44.010. But none of those terms is legally applicable to the Blackwells. They are not the legal custodians or guardians as those terms are used in child welfare legislation.[12] The Blackwells are not, nor did they make an effort to become, D.R.'s legal guardians. They did not initiate formal adoption proceedings or discuss formal adoption proceedings with officials outside the home. Obviously, they are also not the

---

[10] The 1997 amendments to chapter 26.44 RCW require that an alleged perpetrator receive notice of the allegations at the earliest point in the investigation. The amendments are not at issue in the instant case.

[11] *Pettis*, 98 Wn. App. at 560.

[12] *See* RCW 13.34.030(7) and .210.

biological parents of D.R. But the Blackwells assert they are within the scope of the statute based on their claim that they are de facto or psychological parents. However, the Blackwells cannot meet the multipart test of establishing themselves as de facto or psychological parents.[13] In *L.B.*, the Supreme Court stated:

> To establish standing as a *de facto* parent we adopt the following criteria . . . (1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature. In addition, recognition of a *de facto* parent is "limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life."
>
> . . . A *de facto* parent is not entitled to any parental privileges, as a matter of right, but only as determined to be in the best interests of the child at the center of any such dispute.[14]

¶11 The record before us demonstrates that the Blackwells only meet the second part of the test. Certainly parts one and three are not established. The Blackwells are not the natural or legal parents of D.R. and they were paid to serve as foster parents. In addition, the record before the court does not support a holding that an actual bond developed between D.R. and the Blackwells, given D.R.'s desire to leave the Blackwell home.

¶12 The legislative intent of chapter 26.44 RCW does not support the Blackwells' arguments because the legislature did not include licensed caregivers, like foster parents and child care providers, in the list of persons whose bonds with

---

[13] *See In re Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005) (recognizing multiple part test to establish standing as a de facto or psychological parent).

[14] *L.B.*, 155 Wn.2d at 708-09 (citations omitted) (quoting *C.E.W. v. D.E.W.*, 2004 ME 43, 845 A.2d 1146, 1152).

children were of paramount importance.[15] A foster parent has temporary, revocable physical custody of a child who remains a dependent child in the legal custody of the State. As foster parents, the Blackwells do not have standing to pursue a claim against DSHS for negligent investigation because they are not part of the particular, circumscribed class to which DSHS owes a duty under the statute.

¶13 Under the facts, DSHS did not owe a duty to the Blackwells and no claim for negligence may be supported as a matter of law. The trial court's determination that the Blackwells have no cause of action against DSHS for negligent investigation as a matter of law is affirmed.

AGID and ELLINGTON, JJ., concur.

---

[15] RCW 26.44.010 provides: "The bond between a child and his or her parent, custodian, or guardian is of paramount importance . . . ."