# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Dependency of | No.  47264-3-II |
| KDMS. | |
| | UNPUBLISHED OPINION |

JOHANSON, C.J. — NM appeals his dismissal from dependency proceedings regarding KDMS.  He argues that the superior court erred when it concluded he was not a de facto parent and that it was not in KDMS's best interest to have NM as a parent.  We hold that the superior court did not err because even assuming, without deciding, that NM can rely on the de facto parent doctrine to establish standing, he fails to meet the de facto parent requirements.  Accordingly, we affirm.

## FACTS

In May 2014, VS gave birth to KDMS.  During her pregnancy, VS and NM lived together, shared an intimate relationship, and NM provided transportation to VS's doctor appointments. When KDMS was born, he tested positive for methadone and he was hospitalized for withdrawal

symptoms. NM was present for KDMS's birth and he visited KDMS twice a day while KDMS was in the hospital and cared for him during those visits.

In June, when KDMS was discharged from the hospital, the Washington Department of Social and Health Services (DSHS) filed a dependency petition and KDMS immediately came under DSHS's care and custody. The dependency petition named NM as the alleged father. Under an agreed shelter care order, NM was permitted to visit KDMS once a week for two hours, supervised.

In September, a court-appointed special advocate (CASA) observed and reported on a visit between NM and KDMS. KDMS seemed calm and cheerful around NM and NM was able to soothe KDMS. NM expressed concerns about KDMS's foster care. The CASA reported that NM's concerns were appropriate and that NM expressed an interest in caring for KDMS on a permanent basis.

On October 14, NM entered an agreed dependency order. The agreed order increased NM's supervised visits with KDMS to twice a week for two hours per visit. It is undisputed that NM never lived with KDMS.

In November, NM was identified as the father on KDMS's birth certificate based on a paternity acknowledgment. But genetic tests revealed NM was not KDMS's biological father.

In January 2015, DSHS moved for NM's dismissal from the dependency action. In response, NM filed a motion and declaration to continue as a party to the dependency under the "de facto parent" common law doctrine. NM declared that he was present for KDMS's birth, visited him in the hospital, cared for and lived with VS during her pregnancy, was listed on the birth certificate, and signed the paternity acknowledgement. He stated that he and KDMS bonded

and that he would feed, change, and play with KDMS during their visits, that he had scheduled and prepared for a home visit though it did not occur, and that he visited KDMS during their scheduled times. Finally, he said, "I am dedicated to remaining in [KDMS's] life, as his de facto parent, and I continue to be undeterred by any hurdle [DSHS] puts in my way." Clerk's Papers (CP) at 168.

DSHS argued that NM lacked standing to intervene in the dependency proceeding because RCW 13.04.011(5) limits "parent" for the purpose of dependencies to "'biological or adoptive parents.'" CP at 175 (quoting RCW 13.04.011(5)). DSHS further argued that even if de facto parents could proceed in dependencies, NM should not be able to proceed because he does not meet any of the factors for a de facto parent.

After hearing argument and considering the pleadings, the superior court found that NM satisfied some, but not all, of the de facto parent common law factors. The court found and concluded that

> 1.  [NM] does not satisfy the requirements to establish parental rights under the common law doctrine of de facto parentage
> 2.  [VS] consented to and fostered a parent-like relationship between [NM] and [KDMS]
> 3.  [NM] assumed obligations of parenthood for [KDMS] by performing as a parent with parental deficiencies and participating in [KDMS's] dependency action
> 4.  [NM] assumed obligations of parenthood without the expectation of financial compensation
> 5.  [NM] never lived with [KDMS] after his birth
> 6.  [NM] and [KDMS] may have a bond
> 7.  [NM] does not have a bonded dependent relationship that is parental in nature
> 8.  A bond that began in utero and fostered thereafter by a few months of visits that ranged from two to four hours in length cannot establish a parental bond
> 9.  [NM] indicated an intention to fully and completely undertake a permanent, unequivocal, committed and responsible role in [KDMS's] life
> 10. [NM] has parental deficiencies that have not been remedied
> 11. It is not in [KDMS's] best interests to have [NM] as a parent[.]

3

CP at 193.  Based on its findings and conclusions, the superior court dismissed NM as a party to the dependency with prejudice.  NM timely appeals.

## ANALYSIS

NM argues that the superior court erred in concluding that he failed to meet the requirements of the de facto parent doctrine.  Specifically, he assigns error to findings of fact and conclusions of law 1, 7, 8, and 11.  DSHS argues that NM failed to meet the criteria to establish parental rights as a de facto parent of KDMS.[1]  We agree with the State.

### A.  LEGAL PRINCIPLES

#### 1.  STANDARD OF REVIEW

We review findings of fact for substantial evidence and conclusions of law de novo.  *In re Custody of A.F.J.*, 179 Wn.2d 179, 184, 314 P.3d 373 (2013).  We review conclusions of law by determining whether they are supported by the findings of fact.  *In re Marriage of Rideout*, 150 Wn.2d 337, 350, 77 P.3d 1174 (2003).   If a determination concerns whether evidence shows that something occurred, it is a finding of fact.  *Casterline v. Roberts*, 168 Wn. App. 376, 382, 284

---

[1] DSHS first argues that NM is not the biological nor adoptive parent of KDMS and, thus, does not have standing as a parent for the purpose of the dependency proceedings as required by RCW 13.04.11(5).  We assume, without deciding, that NM can rely on the de facto parentage doctrine to attempt to establish standing.  But here, because he does not meet the de facto parent criteria, the superior court did not err in dismissing NM from the dependency action.

P.3d 743 (2012). Unchallenged findings of fact are verities on appeal. *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013).

## 2. DE FACTO PARENTAGE

Washington common law first recognized the de facto parentage doctrine in 2005 in *In re Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005). The doctrine allows a court to award "'parental rights and responsibilities'" to individuals who otherwise do not meet the requirements to establish parentage under the Uniform Parentage Act of 2002, ch. 26.26 RCW. *L.B.*, 155 Wn.2d at 708 (quoting *C.E.W. v. D.E.W.*, 2004 ME 43, 845 A.2d 1146, 1152). *L.B.* adopted the following criteria to establish standing as a de facto parent:

> (1) [T]he natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature.

155 Wn.2d at 708. Additionally, recognition of a de facto parent is limited to an adult who has "'fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life.'" *L.B.*, 155 Wn.2d at 708 (quoting *C.E.W.*, 845 A.2d at 1152).

Accordingly, once a court recognizes a person as a de facto parent, it may then consider whether to award an individual parental rights and responsibilities based on its determination of the best interests of the child. *L.B.*, 155 Wn.2d at 708 (quoting *C.E.W.*, 845 A.2d at 1152). De facto parents are not entitled to any parental privileges as a matter of right, but only as determined to be in the best interests of the child at the center of a dispute. *L.B.*, 155 Wn.2d at 708-09.

## B. NM NEVER LIVED WITH KDMS

NM argues that the superior court's conclusion that he is not a de facto parent because NM never lived with KDMS fails to recognize the limitations that the out-of-home dependency placed on him. DSHS responds that NM cannot be a de facto parent because he never lived with KDMS. We agree with DSHS.[2]

The superior court found that NM never lived with KDMS after his birth. This is a determination based on the evidence of an occurrence and, thus, is a finding of fact. *Casterline*, 168 Wn. App. at 382. The parties do not dispute this finding. And because NM did not assign error to this finding of fact, it is a verity on appeal. *Humphrey Indus., Ltd.*, 176 Wn.2d at 675.

The second factor required to establish de facto parentage is that the petitioner must have lived with the child. *L.B.*, 155 Wn.2d at 708. In *L.B.*, the court considered that the nonbiological mother lived with the child for six years before it remanded to the superior court for a determination under the de facto parentage doctrine. 155 Wn.2d at 684-85. And in *In re Custody of M.J.M.*, 173 Wn. App. 227, 236, 294 P.3d 746 (2013), an acknowledged but nonbiological father who lived with the child for 14 consecutive months and under a temporary parenting plan for

---

[2] Because all four criteria must be met in order to establish a de facto parent relationship, and NM fails to meet at least one of the factors, we decline to review NM's challenge to the fourth factor. *See In re Parentage of J.B.R.*, 184 Wn. App. 203, 208-13, 336 P.3d 648 (2014); *In re Custody of Shields*, 157 Wn.2d 126, 145, 136 P.3d 117 (2006); *In re Custody of A.F.J.*, 161 Wn. App. 803, 811, 260 P.3d 889 (2011) (each holding all four criteria "must" be met), *aff'd*, 179 Wn.2d 179, 314 P.3d 373 (2013); *see also In re Adoption of R.L.M.*, 138 Wn. App. 276, 288-89, 156 P.3d 940 (2007); *Blackwell v. Dep't of Soc. & Health Servs. (DSHS)*, 131 Wn. App. 372, 378, 127 P.3d 752 (2006) (both holding de facto parentage was not established where one or more of the criteria were not met).

additional significant periods for the first three years of the child's life, met this factor of de facto parentage.

Our review of the legal effect of the fact that NM never lived with KDMS until after KDMS's birth is de novo. *Casterline*, 168 Wn. App. at 384. The superior court concluded that NM does not satisfy the de facto parentage criteria. This conclusion is supported by the finding that NM never lived with KDMS. Thus, the superior court did not err in concluding that NM does not satisfy the de facto parentage criteria.

NM argues that "although the circumstances of the dependency meant NM was unable to live in the same household as [KDMS], NM consistently sought to maximize his contact and visitation with [KDMS] and even prepared his home for an in-home visit." Br. of Appellant at 10. NM's argument is that the trial court "fail[ed] to recognize the limitations the out-of-home dependency placed on NM." Br. of Appellant at 10. But NM provides no reasoned argument why the superior court should have considered the limitations of an out-of-home placement nor how that consideration might affect the de facto parent analysis. Rather, he seems to urge this court to conclude that a different test should apply to establish de facto parentage in the context of an out-of-home dependency. However he does not fully explain what that different standard should be or provide any reasoned argument nor legal authority to support this argument.

If NM does suggest a new standard, it would appear to be that his desire and intent to maximize his contact and visitation with KDMS should satisfy the "must have lived with the child"

factor. Here, although NM lived with VS while KDMS was in utero, KDMS entered foster care immediately after his discharge from the hospital and NM never lived with KDMS after his birth.[3]

While NM's actions to maximize his contact with KDMS and to potentially open his home to KDMS may show an earnest interest in supporting the child, these efforts do not meet the standard set in *L.B.* and affirmed in *M.J.M.* that a de facto parent must live with the child. And again, NM presents no reasoned argument nor legal authority to support his assertion that his intent and desire to parent in the future is an adequate substitution for the legal requirement that he live with and provide care for the child for some period of time in order to be declared a de facto parent. We therefore reject his argument.[4]

CONCLUSION

As stated in *L.B.*, "attaining de facto parent status is 'no easy task.'" 155 Wn.2d at 712. Although the record shows that NM intended to and took steps to support KDMS in several ways,

---

[3] We note that NM consistently attended all of the authorized supervised visits and prepared his home for KDMS to visit and as a potential residence for KDMS.

[4] Even if we reached the fourth de facto parentage factor of proving NM served in a "parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature," his argument would still fail. *L.B.*, 155 Wn.2d at 708. Despite NM's prenatal assistance to VS and his efforts to establish a bond with KDMS during his once-a-week hourly and then twice-a-week two-hour supervised visits for approximately six to seven months, these circumstances do not show that KDMS would be adequately bonded with and dependent on NM for parental care for a sufficient length of time to meet the fourth factor. *See In re Custody of M.J.M.*, 173 Wn. App. at 236-38 (holding 14 months of continuous, live-in care provided by an acknowledged but nonbiological father met this factor of de facto parentage).

No. 47264-3-II

NM has never lived with KDMS and, thus, he cannot meet the requirements of de facto parentage. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

LEE, J.

9