THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| DELAURA NORG, as Litigation Guardian ad Litem for her husband, FRED B. NORG, an incapacitated man, and DELAURA NORG, individually, <br><br> Plaintiffs/Respondents, <br><br> v. <br><br> CITY OF SEATTLE <br><br> Defendant/Appellant. | No. 80836-2-I <br><br> DIVISION ONE <br><br> PUBLISHED OPINION |

ANDRUS, A.C.J. — This case asks us to decide whether the public duty doctrine applies in the context of a local government's alleged negligence in responding to a 911 call for emergency medical assistance. Delaura and Fred Norg sued the City of Seattle (the City) claiming paramedics went to the wrong address after Fred suffered a heart attack and Delaura called 911 for help. The trial court concluded the public duty doctrine did not bar the Norgs' negligence claim. We granted discretionary review and now affirm the trial court's partial summary judgment rulings and the order striking the City's affirmative defense.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTUAL BACKGROUND

In the early morning hours of February 7, 2017, Delaura Norg awoke to find her husband, Fred, having a heart attack.  She called 911 at 4:42 am.  Delaura gave the dispatcher the couple's address: 6900 East Green Lake Way North unit 306.  The dispatcher alerted the Seattle Fire Department (SFD) at 4:43 am and its emergency medical units at Station 16, three blocks away, immediately responded to the call.  The dispatcher told Delaura "they are on the way" and instructed her to begin CPR.

Despite receiving the correct address, the responding SFD units assumed they were being dispatched to a nursing home at 6720 East Green Lake Way North, four blocks away from the Norgs' building.  The responders drove past the Norgs' apartment and arrived at the nursing home at 4:46 am.  They entered the nursing home and proceeded to apartment 306.

Meanwhile, the 911 dispatcher continued to assure a distraught Delaura that help would arrive imminently.  The dispatcher assured Delaura eight separate times that responders were arriving soon or had already arrived.  Less than five minutes into the call, the dispatcher told Delaura that "they are at the building."  Seven minutes in, the dispatcher stated "They're coming up to your room now."  A minute later, he stated "they are coming up to your door now."  Eleven minutes in, the dispatcher instructed Delaura not to leave her apartment to let the responders into the building and instead to remain with her husband doing chest compressions.  The dispatcher remained on the phone with Delaura for nearly 17 minutes.  The SFD units, after realizing their mistake, verified the address and

arrived at the Norgs' apartment at 4:58 am, fifteen minutes after they were dispatched. Fred survived the heart attack but suffered an anoxic brain injury and sustained permanent cognitive and neurological deficits.

The Norgs filed this suit against the City in October 2018, alleging that the City was negligent in responding to Delaura's 911 call and the resulting delay in administering emergency medical care aggravated his injuries. The City moved for summary judgment, arguing the public duty doctrine barred the Norgs' claims. The Norgs moved for partial summary judgment on the issue of whether the City owed them an actionable common law duty of ordinary care under the circumstances. The trial court granted the Norgs' motion for partial summary judgment and struck the City's public duty doctrine defense. The trial court certified its rulings for an interlocutory appeal, and we granted discretionary review.

## ANALYSIS

The sole issue on appeal is whether the public duty doctrine bars the Norgs' negligence claim as a matter of law. Appellate courts review a summary judgment order de novo and perform the same inquiry as the trial court. Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." CR 56(c). We view all facts and reasonable inferences in light most favorable to the non-moving party. Owen v. Burlington N. Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005).

The City argues that the public duty doctrine bars the Norgs' claim because the duty to respond to any 911 call is a public duty. We disagree for three reasons. First, the source of the duty in this case is neither a statute nor an ordinance but a common law duty to exercise reasonable care in providing emergency medical services. Second, most of the Supreme Court's prior 911 call cases involved requests for police protection from a third party, not a request for emergency medical services—a key distinguishing factor. Third, the Supreme Court's recent public duty doctrine cases, Beltran-Serrano v. City of Tacoma, 193 Wn.2d 537, 549, 442 P.3d 608 (2019), and Mancini v. City of Tacoma, 196 Wn.2d 864, 879, 479 P.3d 656 (2021), support the conclusion that the doctrine does not apply here.

1. Source of Duty

In 1961, the legislature repealed the State's sovereign immunity for governmental functions. LAWS OF 1961, ch. 136 § 1 (codified as RCW 4.92.090). And in 1967, the legislature did the same for local governments. LAWS OF 1967, ch. 164, § 1 (codified as RCW 4.96.010). RCW 4.96.010 now states:

> All local governmental entities, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, to the same extent as if they were a private person or corporation.

Under this statute, governmental liability is not unlimited. Evangelical United Brethren Church of Adna v. State, 67 Wn.2d 246, 252-53, 407 P.2d 440 (1965). State or local governments are liable for "damages only when such damages arise out of 'tortious conduct to the same extent as if it were a private person or corporation.'" Id. The official conduct giving rise to liability must be tortious and it

must be analogous, in some degree, to conduct that would lead to liability of a private person or corporation. Id.

To sustain an actionable negligence claim, a plaintiff must establish four essential elements: duty, breach, proximate cause, and resulting harm. Mancini, 196 Wn.2d at 879. To establish a duty in tort against a governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not a general obligation owed to the public. Beltran-Serrano, 193 Wn.2d at 549.

General obligations owed to the public are those duties mandated by statute or ordinance. Munich v. Skagit Emergency Comm'n Ctr., 175 Wn.2d 871, 888-89, 288 P.3d 328 (2012) (Chambers, J., concurring, joined by four justices).[1] The doctrine does not apply to duties that governments have in common with private persons. Id. "The distinction between mandated duties and common law duties is important because duties imposed by common law are owed to all those foreseeably harmed by the breach of the duty." Id. at 891.

The holding in Munich followed an earlier concurrence from Justice Chambers in Cummins v. Lewis County, 156 Wn.2d 844, 133 P.3d 458 (2006). In that case, Cummins sued the city of Centralia and Lewis County, alleging they were negligent in responding to her husband's 911 call while he was suffering a heart attack. Id. at 850. The 911 dispatcher received a call in which a man said "1018 E Street, heart attack" before hanging up. Id. at 848. Mistakenly believing the call was a hoax, the dispatcher did not send any emergency services to the address. Id. at 849. The caller, Cummins' husband, died of a heart attack and

---

[1] In Beltran-Serrano, the Supreme Court acknowledged that Justice Chambers' concurrence in Munich is binding precedent. 193 Wn.2d at 549.

Cummins brought a wrongful death action alleging negligence by the 911 dispatch unit and the Centralia Police Department. Id. at 850. Cummins' claim was premised on the statutory duty to provide a "rapid response" to 911 calls under RCW 38.52.500. Id. at 857. The trial court granted summary judgment, concluding that the suit was barred by the public duty doctrine. Id. at 850.

The Supreme Court agreed. In discussing the "threshold" issue of whether the city or county owed a duty to Cummins' husband, the court assumed, without deciding, that the duty at issue was one owed to the public; the sole question was whether Cummins had proved the "special relationship" exception to the public duty doctrine. Id. at 853-54. Under this exception, a government entity may be held liable for negligently performing a public duty if the plaintiff can prove circumstances setting his relationship with the government apart from that of the general public.[2] Id. at 854. The court held that Cummins failed to establish that her husband had had a direct telephone conversation with the 911 dispatcher or that the dispatcher had affirmatively promised to provide assistance. Id. at 855. Without this evidence, it concluded, the widow failed to establish the existence of a special relationship. Id.

But Justice Chambers, in a lengthy concurrence, set out the jurisprudential basis for what would subsequently become the holding in Munich. He argued that the duty to exercise reasonable care in providing emergency medical services was not, in fact, a public duty because the provision of those services "is not a unique

---

[2] The "special relationship" arises when (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public; (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff. Cummins, 156 Wn.2d at 854.

function of government" required by statute or ordinance. Id. at 872. He noted that the public duty doctrine had been "regularly misunderstood and misapplied" by Washington courts. Id. at 861. The doctrine, he contended, was designed to help determine to whom the government owed a duty, not to determine the actual duty owed. Id. Until the court's decision in Chambers-Castanes v. King County, 100 Wn.2d 275, 669 P.2d 451 (1983), he wrote, "the principles that would ultimately become known as the public duty doctrine were primarily applied only when the court first found some type of duty annunciated in a statute or code." Cummins, 156 Wn.2d at 864. The Chambers-Castanes case, in Justice Chambers' opinion, was a "poorly analyzed case" that "greatly confused the doctrine." Id. at 866-67.

Chambers-Castanes involved a 911 emergency call for police assistance during the commission of a crime. Id. at 869. A husband and wife, driving through Woodinville during rush hour, were assaulted by men in a pickup, leading several people to call 911. Chambers-Castanes, 100 Wn.2d at 278-80. The police did not respond for nearly an hour and a half. Id. at 280. According to Justice Chambers, Chambers-Castanes conflated the concept of a tort duty of care and the "special relationship" exception when it concluded that an actionable duty to provide police services will arise only if the special relationship test is met. Cummins, 156 Wn.2d at 869, citing Chambers-Castanes, 100 Wn.2d at 278. Justice Chambers criticized the court's confusing application of the exceptions to the public duty doctrine and pointed to the absurdity of allowing 911 operators to ignore emergency calls with

impunity simply because they did not offer sufficient assurances to a caller to create a "special relationship." Id. at 861.

Justice Chambers disagreed with the majority's application of the public duty doctrine in Cummins because the policy considerations relating to calls for medical treatment were fundamentally different from calls for police assistance during a crime. Id. at 872. Providing emergency life-saving medical help, he noted, is not a function unique to government. Id. "Hospitals, ambulance services, private persons, and corporations respond to such calls." Id. Indeed, under RCW 35.21.766(2), while regional fire protection service agencies are authorized to establish ambulance service to be operated as a public utility, they may not compete with existing private ambulance service "unless the legislative authority of the city or town determines that the city or town . . . is not adequately served by an existing private ambulance service." As Justice Chambers wrote, "given that emergency medical assistance is not a unique function of government, when government decides to handle requests for emergency care, it should be held liable for damages for its tortious conduct in the same way as a private person or corporation." Id. at 872. Justice Chambers stated:

> This court should analyze 911 calls for medical emergencies based not upon confused mechanical application of the public duty doctrine but upon policy considerations, foreseeability, and proximate cause. A government entity that encourages people to call it for medical emergencies should be liable for the foreseeable consequences proximately caused by its failure to exercise ordinary care. Contrary to some concerns, application of traditional tort principles will not open Pandora's box and release dread evils upon an innocent world. In fact, government should be accountable for its actions just as a private party is held accountable. Accountability encourages competency.

Id. at 873. Justice Chambers concurred in the result in Cummins, not because the public duty doctrine barred the claim, but because under the facts of that case, the county had not ignored the 911 call and had investigated the identity of the caller and the location from which the call was made. Id. at 874. The county's 911 enhanced system identified the call as having been made from a pay phone, not from the Cummins' residence. Id. A police officer sent to investigate spoke to an 11-year-old boy who stated he had made a prank 911 call from that pay phone. Id. at 874. The county's response, Justice Chambers concluded, fell within the standard of ordinary care. Id.

Justice Chambers' concurrences in Cummins and Munich stand for the proposition that the public duty doctrine applies only when the duty at issue arises out of a statute or ordinance mandating action by the government entity. In this case, the City cites no statute or ordinance mandating that municipal fire departments provide emergency medical services. Instead, the City has chosen to provide these services to its residents. Before 1970, when the first group of Seattle firefighters began their training as paramedics in cooperation with Harborview Medical Center and the University of Washington, municipalities did not traditionally provide emergency on-site medical services.[3]

Under common law, any entity, public or private, that undertakes to provide emergency medical services to others owes a duty of care to those to whom it provides such services. In Beltran-Serrano, our Supreme Court clearly held that "[a]t common law, every individual owes a duty of reasonable care to refrain from

---

[3] See Medic One, SEATTLE.GOV, http://www.seattle.gov/fire/about-us/about-the-department/operations/medic-one.

causing foreseeable harm in interactions with others." 193 Wn.2d at 550 (citing Restatement (Second) of Torts § 281 cmt. e). Under the Restatement (Second) of Torts § 323 (1965),

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care . . . if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.[4]

Private ambulance service providers, providing emergency medical services, have historically been subjected to civil suit for negligence. See Vogreg v. Shepard Ambulance Co., 47 Wn.2d 659, 289 P.2d 350 (1955) (woman fell out of ambulance while riding with paralyzed husband to new home); Scott v. Rainbow Ambulance Service, Inc., 75 Wn.2d 494, 452 P.2d 220 (1969) (ambulance service sued after stretcher tipped over while being wheeled to ambulance allegedly causing additional injury to patient). Under RCW 4.96.010, if the City chooses to provide emergency medical services, and it is not statutorily mandated to do so, it should be treated no differently than private parties providing the same services under similar circumstances.

2. Supreme Court's Prior 911 Call Cases

The City contends that under well-established Supreme Court precedent, no tort liability can ever arise out of a governmental response to a 911 call because

---

[4] The legislature appears to have recognized this common law duty when it passed RCW 4.24.300. Under RCW 4.24.300(1), anyone providing emergency medical services without compensation or the expectation of compensation at the scene of an emergency or transports injured persons for emergency medical treatment are liable for civil damages only for acts or omissions constituting "gross negligence or willful or wanton misconduct." But "[a]ny person rendering emergency care during the course of regular employment and receiving compensation or expecting to receive compensation for rendering such care is excluded from the protection" of that statute.

the duty to respond to such calls is a duty owed to the public in general. But the City misreads the holdings of these cases. While the Supreme Court has addressed the public duty doctrine in cases involving 911 calls, most of these cases involved requests for police protection from a third party, not requests for emergency medical services. These cases are thus distinguishable because, as Justice Chambers noted in Cummins, providing police protection is an inherent government function, while delivering emergency medical services is not.

In Munich, the estate of a man shot and killed by a neighbor brought a wrongful death action against the county alleging that its emergency communications center was negligent in coding his 911 call for police assistance as a non-emergency and delaying dispatching police to the scene. 175 Wn.2d at 874. The Supreme Court identified duties at issue in that case as arising from two statutes, RCW 36.28.010, requiring county sheriffs to preserve the peace, and RCW 38.52.020, authorizing local governments to create emergency management organizations to protect the public peace and to preserve the lives of the people of the state. Id. at 878. The Supreme Court explicitly noted that "[t]he County's duty in this case was mandated by statute; no common law duty is at issue." Id. n. 2. Because the duties at issue were owed to the general public, and not to the decedent, the court's analysis in Munich hinged on whether the estate had established the elements of the "special relationship" exception to the public duty doctrine. Id. at 877. It concluded the estate had not done so. Id. at 885. Because the duty at issue in this case is a common law duty, and not a duty mandated by statute, Munich is not dispositive.

Similarly, in Bratton v. Welp, 145 Wn.2d 572, 39 P.3d 959 (2002), a shooting victim's estate and family sued the county, claiming its 911 emergency operator was negligent in failing to provide timely help to protect them from a violent neighbor. The family had made several calls to 911 reporting threats from the neighbor. Id.at 574-75. The Supreme Court held that under the "special relationship" exception to the public duty doctrine, there were genuine issues of material fact whether the county made express assurances to the family that it would send police if the neighbor threatened them again. Id. at 577. But Justice Chambers noted in his concurrence in Munich that the court assumed in Bratton that "there is a mandated duty under RCW 36.28.010 to preserve the peace and arrest those who disturb it and have held a special relationship is created by the assurances of a 911 operator upon which the plaintiff reasonably relies." 175 Wn.2d at 894. Again, the duty at issue was indisputably a duty owed to the public in general. See also Beal for Martinez v. City of Seattle, 134 Wn.2d 769, 784-85, 954 P.2d 237 (1998) (woman murdered because of delayed response to 911 call in which she sought protection from estranged husband; police duty to protect person from criminal acts of third party is general obligation owed to public in general).

The only case involving a 911 call for emergency medical services is Cummins. But that case is, as Justice Chambers stated in his concurrence, distinguishable from Bratton and Beal – a 911 call for emergency medical treatment is fundamentally different from a request for police protection from violent assault. 156 Wn.2d at 872. Providing police assistance to reported crimes

is an inherent government function; providing emergency medical assistance is not.

3. The Supreme Court's Recent Decisions in Beltran-Serrano and Mancini

Finally, the City contends the Supreme Court's recent decisions in Beltran-Serrano and Mancini do not apply to this case. In Beltran-Serrano, a Tacoma Police officer shot a mentally ill homeless man after the officer approached him to discuss the city's panhandling laws. 193 Wn.2d at 540-41. When the man, who did not understand English, ran from the officer, she shot him multiple times. Id. Beltran-Serrano sued for assault, battery, and negligence, arguing that the officer unreasonably escalated the situation, causing his injuries. Id. at 542. The City argued that the officer did not owe a duty to Beltran-Serrano under the public duty doctrine. Id. at 542. The Supreme Court disagreed, reasoning that "every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others. . . . This duty applies in the context of law enforcement and encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." Id. at 550. It held that despite the government's "statutorily imposed obligation to provide police services, enforce the law, and keep the peace," it still owes a specific tort duty of reasonable care to individuals with whom its agents affirmatively interact. Id. at 552.

In Mancini v. City of Tacoma, the Supreme Court again held that the public duty doctrine did not bar a negligence claim against a municipality. 196 Wn.2d at 886. Mancini sued the City of Tacoma after several police officers executed a search warrant on the wrong apartment, broke down Mancini's door with a

battering ram, entered her apartment with guns drawn, handcuffed her and dragged her, clad only in a nightgown, to the street. Id. at 871. The Supreme Court concluded that the public duty doctrine did not apply, recognizing

> a difference in the public duty doctrine context between "misfeasance" and "nonfeasance." Unlike government actors in many public duty doctrine cases who fail to protect a plaintiff from harm caused by a third party or entity, the police in this case personally caused the harm of which Mancini complains. In such a case of affirmative misfeasance, all individuals have a duty to exercise reasonable care—including when they invade another's property.

Id. at 885-86 (citations omitted).

The City seeks to distinguish Beltran-Serrano and Mancini on the basis that the affirmative acts of misfeasance in each of those cases directly caused the plaintiff's injuries, whereas the paramedics' nonfeasance—their failure to show up at the Norg apartment in a timely manner—did not cause Fred to suffer a heart attack. There are two problems with this argument. First, the City misunderstands the meaning of the words "misfeasance" and "nonfeasance." Misfeasance is "[a] lawful act performed in a wrongful manner." BLACK'S LAW DICTIONARY 1197 (11th ed. 2019). Nonfeasance is "[t]he failure to act when a duty to act exists." BLACK'S LAW DICTIONARY 1265 (11th ed. 2019). Responding to a call for emergency medical help but doing so in a negligent manner is performing a lawful act in a wrongful manner; it is not the failure to act.

Second, the City is conflating the concepts of duty and causation. Under section 323 of the Restatement, the Norgs need not prove that the paramedics caused Fred to suffer a heart attack. They need only prove that the negligence increased the risk of harm to Fred. The Norgs allege that the delay in responding

- 14 -

to the correct address caused Fred to experience oxygen deprivation, causing permanent brain damage. Whether the Norgs can establish a causal link between the paramedics' delay and Fred's brain injury remains unresolved at this stage in the litigation.

Because the duty at issue in this case is not a public duty owed to the general public at large but is instead a common law duty to exercise reasonable care in providing emergency medical services, the public duty doctrine does not apply and the trial court did not err in so concluding.

We therefore affirm.

_Andrus, A.C.J._

WE CONCUR:

_Mann, C.J._

_Dwyer, J._