IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NANCY JAMES, Chapter 7 Trustee for the Bankruptcy Estate of Ms. Jessica Lakeru and Mr. Akinwale A. Lakeru; and VIEW POINTE ADULT FAMILY HOME, LLC, A Washington Limited Liability Company, UBI #603 584 188, | No. 86077-1-I |
| | DIVISION ONE |
| Appellants, | UNPUBLISHED OPINION |
| v. | |
| STATE OF WASHINGTON, STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Respondent. | |

SMITH, C.J. — Jessica Lakeru's two adult family homes were shut down after an investigation by the Department of Social and Health Services (DSHS). Lakeru challenged DSHS's findings and sanctions in an administrative hearing. The administrative law judge found that, while Lakeru had committed a regulatory violation, she was not negligent and the sanctions imposed by DSHS (revocation of Lakeru's licenses) were arbitrary and capricious. DSHS requested review and the review judge affirmed.

Lakeru then initiated a complaint against DSHS, alleging various common law claims. In its answer, DSHS raised multiple affirmative defenses, including immunity under the public duty doctrine. Both parties moved for summary

judgment. The court granted DSHS's motion for summary judgment as to immunity under the public duty doctrine. The court denied Lakeru's motions and dismissed her claims. The court also rejected Lakeru's argument that DSHS's affirmative defenses of comparative fault, nonparty at fault, good faith, and mitigation of damages are barred because issue preclusion prohibits relitigation of issues. Lakeru appeals.

We affirm the trial court's ruling that issue preclusion does not apply, but reverse its ruling that the public duty doctrine bars Lakeru's common law claims against DSHS and remand for further proceedings.

FACTS

Jessica Lakeru owned two adult family homes (AFH), licensed by DSHS. In July 2019, DSHS opened an investigation into Lakeru's homes after receiving an anonymous complaint that raised concerns about the care of a patient. Specifically, allegations were made that Lakeru performed, and taught her staff to perform, catheter changes in violation of nursing regulations, which were dangerous and posed a threat to patients in her care. An investigator from DSHS first went to Lakeru's Fairwood Park AFH. They stayed for about four hours, interviewing staff and residents. A week later, the DSHS investigator visited Lakeru's other AFH, View Pointe, and spent about three hours interviewing residents and staff.

The day after the investigator visited each facility, DSHS imposed a "stop placement," requiring Lakeru to cease admitting new patients. DSHS also

2

imposed "verbal conditions" on both facilities, requiring Lakeru to have registered nurses in the facilities daily to administer certain services. Lakeru complied with the conditions. DSHS did not conduct a revisit. In August 2019, less than a month after the initial investigation, DSHS suspended Lakeru's licenses for both View Pointe and Fairwood Park, essentially closing down both facilities. The letter sent from DSHS to Lakeru stated she had shown "an inability to comply with regulations and . . . limited ability to safely operate the home." Attached to the sanctions letter was a "Statement of Deficiencies/Plan of Correction," but it did not actually include a plan of correction. After receiving the notices of closure, Lakeru requested an administrative hearing to contest DSHS's findings and sanctions.

In May 2020, a four-day hearing was held. Both DSHS and Lakeru presented evidence and examined witnesses. The administrative law judge found that Lakeru failed to provide care and services as required by WAC 388-76-10400(4), but also found that Lakeru had not negligently cared for the residents and the revocation of her AFH's licenses should be reversed. DSHS petitioned for review of the decision.

In March 2021, a review judge issued an 83-page review decision and final order largely affirming the initial review order but reversing the finding that Lakeru had failed to provide care and services as required by WAC 388-76-10400(4). The review judge found DSHS failed to provide Lakeru with a plan of correction and never completed the statutorily required revisit after issuing the

stop placement orders. The judge also noted DSHS "jumped to the most severe sanctions," which were unnecessary in this case. The review judge concluded DSHS's sanctions were "arbitrary and capricious."

After the decision from the review judge, Lakeru[1] initiated a complaint against DSHS alleging four causes of action: (1) intentional interference with contractual relations, (2) intentional interference with business expectancy, (3) negligence, and (4) violation of the Washington Consumer Protection Act.[2] In its answer, DSHS raised the affirmative defenses of comparative fault, statute of limitations, nonparty at fault, discretionary immunity, mitigation of damages, failure to state a claim, statutory immunity, good faith, public duty doctrine, and reservation of rights.

Lakeru then moved for summary judgment requesting the court bar defendant's affirmative defenses of comparative fault, nonparty at fault, good faith, and mitigation of damages because issue preclusion prohibits relitigating of issues.[3] In her motion, Lakeru also requested the court grant summary judgment on the defendant's affirmative defenses of discretionary immunity and the public duty doctrine, stating the defenses were inapplicable. In its response, DSHS requested the court deny Lakeru's motion because issue preclusion does not

---

[1] Between the time DSHS shut down Lakeru's facilities and the review judge issued its order, Lakeru filed for bankruptcy. Nancy James was appointed trustee of the bankruptcy proceedings and initiated the complaint on behalf of Lakeru. James is the named appellant in the case.

[2] Prior to presentation of the evidence, Lakeru voluntarily dismissed her claim under the Consumer Protection Act.

[3] DSHS subsequently withdrew its affirmative defenses of nonparty fault and discretionary immunity.

apply. DSHS also cross-moved for summary judgment seeking dismissal of Lakeru's complaint with prejudice. DSHS claimed Lakeru's lawsuit was barred by sovereign immunity and/or qualified immunity and the public duty doctrine. DSHS also argued that, even if these doctrines did not bar the suit, Lakeru's claims for negligent investigation, tortious interference with business expectations, tortious interference with contractual relations, and Consumer Protection Act violations would fail as a matter of law.

Lakeru made a second motion for summary judgment, requesting the court find DSHS was negligent, intentionally interfered with her contractual relations, and intentionally interfered with her business expectations. The court granted DSHS's motion for summary judgment as to immunity under the public duty doctrine. The court denied Lakeru's motions and dismissed her claims. Lakeru appeals.

ANALYSIS

This court reviews an order on summary judgment de novo. *Donohoe v. State*, 135 Wn. App. 824, 833-34, 142 P.3d 824 (2006). Summary judgment is appropriate only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Donohoe*, 135 Wn. App. at 833. We view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Donohoe*, 135 Wn. App. at 834.

DSHS is statutorily mandated to license adult family homes and promulgate rules and regulations governing the homes. RCW 70.128.005;

5

RCW 70.128.010. The purpose of DSHS's regulatory oversight is to encourage the development and maintenance of adult family homes, as well as establish standards for regulating the homes and protecting residents. RCW 70.128.007(1), (2). DSHS has broad authority when determining whether to issue a license, suspend or revoke a license, and take other licensing actions. RCW 70.128.005(4).

<u>Public Duty Doctrine</u>

Lakeru contends the public duty doctrine does not apply because DSHS owed her a common law duty to exercise reasonable care. DSHS asserts the court did not err by granting its motion for summary judgment because it is a government regulatory program that improves the welfare of the public generally and, therefore, the public duty doctrine bars Lakeru's claims. We agree with Lakeru.

Under the public duty doctrine, government regulatory programs for the public benefit generally do not create a duty to protect individual citizens. *Donohoe*, 135 Wn. App. at 834. "The policy behind the public duty doctrine is that legislation for the public benefit should not be discouraged by subjecting the government to unlimited liability for individual damages." *Donohoe*, 135 Wn. App. at 834. But the government is not completely immune from liability. *Norg v. City of Seattle*, 200 Wn.2d 749, 756, 522 P3d 580 (2023). If a duty is owed to a particular individual, rather than the public as whole, the government may be held liable for the tortious conduct. *Munich v. Skagit Emergency Commc'n Ctr.*, 175

Wn.2d 871, 878, 288 P.3d 328 (2012). But if the duty is owed to the public, then "no claim for negligence may be supported as a matter of law." *Blackwell v. Dep't of Soc. & Health Servs.*, 131 Wn. App. 372, 379, 127 P.3d 752 (2006). In this way, "[t]he public duty doctrine is a 'focusing tool' used to determine whether a governmental entity owes a duty to the public as a whole or to a particular individual." *Boone v. Dep't of Soc. & Health Servs.*, 200 Wn. App. 723, 740, 403 P.3d 873 (2017) (quoting *Munich*, 175 Wn.2d at 878).

Washington courts "recognize a difference in the public duty doctrine context between 'misfeasance' and 'nonfeasance.' " *Mancini v. City of Tacoma*, 196 Wn.2d 864, 885-86, 479 P.3d 656 (2021) (quoting *Robb v. City of Seattle*, 176 Wn.2d 427, 439, 295 P.3d 212 (2013)). " 'Misfeasance' " is " '[a] lawful act performed in a wrongful manner.' " *Norg v. City of Seattle*, 18 Wn. App. 2d 399, 412, 491 P.3d 237 (2021) (alteration in original) (quoting Black's Law Dictionary 1197 (11th ed. 2019)). When an individual engages in misfeasance that results in positive injury to another, that individual has a duty to exercise reasonable care. *Robb*, 176 Wn.2d at 435.

Here, Lakeru asserts that because she is bringing common law claims, the public duty doctrine does not apply. Lakeru does not allege that an implied statutory cause of action against DSHS exists or that any of the exceptions to the public duty doctrine apply;[4] Lakeru only contends DSHS has an "actionable, common law duty to use reasonable care."

---

[4] The four exceptions to the public duty doctrine are special relationship, legislative intent, failure to enforce, and volunteer rescue. *Donohoe*, 135 Wn.

While there are times when DSHS's actions are protected by the public duty doctrine, when DSHS fails to follow its own statutory guidelines and engages in wrongful conduct, the public duty doctrine is no longer a shield from liability. Two Washington Supreme Court cases—*Norg*, 200 Wn.2d 749, and *Mancini*, 196 Wn.2d 864—are illustrative.

In *Norg*, Delaura Norg called 911 when she woke up and found her husband unresponsive. 200 Wn.2d at 401. Within a minute of answering the call, the 911 dispatcher assigned emergency medical units to respond. *Id.* at 401. Despite giving the units Norg's correct address, the units mistakenly assumed the call was for a nearby nursing home where they frequently received calls. *Id.* at 401-02. Because of this mistake, they didn't arrive at the Norg's house until nearly twenty minutes after Norg placed the call to 911. *Id.* at 402. Norg sued the city, claiming the city owed a "common law duty to exercise reasonable care in providing emergency medical services." *Id.* at 403. The Supreme Court held that "responding to a call for emergency medical help but doing so in a negligent manner is performing a lawful act in a wrongful manner" and results in a common law duty to exercise reasonable care. *Id.* at 413.

In *Mancini*, officers executing a search warrant received no response after knocking on the apartment door for about thirty seconds. 196 Wn.2d at 871. The officers broke open the door using a battering ram and entered the

---

App at 834. Because Lakeru does not rely on any of these exceptions for her claim, we need not address them here. The State addresses the exceptions in its reply brief.

apartment with guns drawn. *Id.* When Kathleen Mancini came out of the bedroom, the officer's pushed her to the floor and cuffed her. *Id.* It was only when the officers took Mancini outside and questioned her did they realize that they had entered the wrong apartment. *Id.* Mancini sued the city for negligence, claiming the actions of the police officers "fell below the standard of care in the performance of their duties." *Id.* at 872. The Court agreed with Mancini and held that police officers "owe a duty to exercise reasonable care when executing a search warrant." *Id.* at 888. The Court noted that "this is not a case where the City's duty ran solely to the public at large. . . . [T]he police in this case personally caused the harm of which Mancini complains. In such a case of affirmative misfeasance, all individuals have a duty to exercise reasonable care." *Id.* at 885-86 (citations omitted).

In both *Norg* and *Mancini*, a common law duty of reasonable care arose when an entity engaged in wrongful conduct beyond what the relevant statute imposed. In *Norg*, the city owed a common law duty when it failed to exercise reasonable care in providing emergency medical services. In *Mancini*, a duty arose when police officers negligently executed a search warrant.

Here, DSHS's common law duty arose when it initiated an investigation into Lakeru's AFHs but failed to adhere to the requirements imposed by RCW 70.128 and WAC 388-76-10930. Under WAC 388-76-10930(2), when DSHS finds an AFH out of compliance, it is required to provide the AFH with an inspection report that includes an "attestation of correction statement" for each

9

cited deficiency. These statements provide the AFH with a plan of correction, including how to rectify the deficiencies and maintain compliance. WAC 388-76-10930(4). The AFH must complete each attestation of correction, indicating the date when the deficiency has been/will be corrected, and return the statements to DSHS. WAC 388-76-10930(5)-(7). DSHS is also required revisit a facility that it has imposed a stop placement upon to assure compliance. RCW 70.128.160(3).

In this case, DSHS did not provide Lakeru with a plan of correction or conduct a mandatory site revisit. While DSHS did serve Lakeru with a "Statement of Deficiencies/Plan of Correction," the statement did not include attestation of correction statements. Without providing Lakeru with a plan of correction or conducting a revisit, DSHS had no way of knowing whether Lakeru failed to comply with the regulations imposed. Instead, based only on preliminary findings, DSHS imposed the most severe sanction available: closing Lakeru's facilities and requiring all residents to vacate the homes.

By failing to comply with its own regulations set forth in RCW 70.128 and WAC 388-76-10930, DSHS performed a lawful act in a wrongful manner, resulting in harm to Lakeru. DSHS's affirmative misfeasance gave rise to a common law duty of reasonable care to Lakeru. Therefore, the public duty doctrine does not apply to Lakeru's claims.[5]

---

[5] We emphasize that the facts of this case are unusual and our holding is a direct result of these facts.

10

Issue Preclusion

Lakeru contends issue preclusion (collateral estoppel)[6] bars relitigating of any of the issues in the administrative proceedings and DSHS's affirmative defenses. Because none of the issues in Lakeru's claims or DSHS's affirmative defenses are identical to those determined in the administrative proceedings, issue preclusion does not apply.

Issue preclusion bars relitigating of an issue that has already been decided in a previous proceeding. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). In order for issue preclusion to apply, the following four elements must be met:

> 1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen*, 152 Wn.2d at 307. Washington courts apply issue preclusion to issues previously adjudicated in administrative proceedings. *Id.*

Here, the parties agree the administrative hearing ended in a judgment on the merits and the parties are the same, but disagree about the similarity of the issues litigated and whether applying issue preclusion would result in injustice.

---

[6] "Issue preclusion" is the modern term for "collateral estoppel." *Scholz v. Wash. State Patrol*, 3 Wn. App. 2d 584, 594, 416 P.3d 1261 (2018).

1. Similarity of Issues

For issues to be identical in subsequent proceedings, the causes of action or claims asserted do not need to be the same, but the issues must be identical. *Rains v. State*, 100 Wn. 2d 660, 665, 674 P.2d 165 (1983). Mere identity of similar evidence is not enough to establish identical issues for purposes of issue preclusion. *Est. of Sly v. Linville*, 75 Wn. App. 431, 437, 878 P.2d 1241 (1994).

Here, Lakeru asserts issue preclusion should apply to DSHS's affirmative defenses of comparative fault, good faith, and mitigation of damages because the issues have already been litigated. Lakeru contends the administrative findings stating she was not negligent and did not fail to provide reasonable care vitiate DSHS's affirmative defenses of comparative fault and mitigation of damages. But Lakeru's error is assuming that, because the findings from the administrative hearings reported she was not negligent, the judges impliedly addressed the issues of comparative fault or mitigation of damages. Lakeru's negligence may be relevant in determining comparative fault and mitigation of damages, but it does not encompass the entirety of the issues. Neither comparative fault nor mitigation of damages were decided, or even addressed, in the administrative hearings.

Lakeru also contends, because the Board of Appeals Review Judge found DSHS acted "arbitrarily and capriciously," DSHS could not have possibly acted in good faith and, therefore, "no genuine issue of material fact" exists concerning whether DSHS intentionally interfered with Lakeru's contractual obligations and

business expectancies. Again, Lakeru is inferring evidence from one issue precludes the litigation of a different issue with similar evidence. While Lakeru may have a viable argument, the issues presented in Lakeru's complaint require findings the administrative proceedings did not address.[7] The issues before the administrative law judge were limited to whether Lakeru violated licensing requirements under WAC 388-76-10400 and whether DSHS's summary suspensions were appropriate. Because essential elements to Lakeru's claims and DSHS's defenses were not addressed in the previous proceedings, issue preclusion does not apply.

2. Injustice on the parties

Even if the issues are similar in both proceedings, a court may still decline to apply issue preclusion if its application would work an injustice against a party. *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 513, 745 P.2d 858 (1987). One such injustice is when disparity in relief between the two proceedings provides different litigation incentives for the parties. *Reninger v. Dep't of Corrections*, 134 Wn.2d 437, 453, 951 P.2d 782 (1998). Courts look to disparity of relief between what one can recover in the first action compared to the second action "to determine whether sufficient incentive existed for the concerned party to litigate vigorously in the administrative hearing." *Reninger*, 134 Wn.2d at 453.

---

[7] For example, intentional interference with contractual relations requires, among other things, the existence of a valid contract and an intentional breach of that contract. Neither of the proceedings discussed the existence of a contract.

Here, the maximum potential relief available to Lakeru in the administrative forum was reinstatement of her licenses. The administrative court could not assess lost revenue and profits, determine loss of consortium, or provide for any form of monetary damages—all of which Lakeru claimed as damages suffered in her complaint. Because the amount Lakeru could recover in the administrative hearing is significantly less than the potential recovery at trial, DSHS may not have had the same incentive to litigate the issues at the administrative hearing. Therefore, applying issue preclusion would constitute an injustice against DSHS. Accordingly, issue preclusion does not apply to the issues determined in the administrative hearings.

We affirm the trial court's denial of summary judgment concerning issue preclusion, but reverse the ruling that the public duty doctrine applies and remand for further proceedings consistent with this ruling.

Smith, C.J.

WE CONCUR:

Feldman, J.          Mann, J.