98 P.3d 822 (2004)
Mary A. CUMMINS, individually, and as Personal Representative of the Estate of Leon V. Cummins, deceased, Appellant,
v.
LEWIS COUNTY, a municipality; Centralia a municipality, Respondents,
Qwest Corporation, formerly doing business as U.S. West Communications, a foreign corporation, Defendants.
No. 30738-3-II.
Court of Appeals of Washington, Division 2.
September 8, 2004.
Publication Ordered October 5, 2004.
*823 Terry E. Lumsden, Law Offices of Terry E. Lumsden, Tacoma, Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend PS, Seattle, for Appellant.
Guy M. Bogdanovich, Law Lyman Daniel Kamerrer et al, Olympia, Robert William Novasky, Burgess Fitzer PS, Tacoma, Geoffrey C. Bedell, Soha & Lang PS, Seattle, for Respondents.
VAN DEREN, J.
Mary A. Cummins filed a wrongful death action based on negligent maintenance of an emergency dispatch system and failure to respond to a 911 call. Cummins appeals summary judgment in favor of the City of Centralia and Lewis County based on her failure to demonstrate an actionable duty under the public duty doctrine. We affirm, holding that no material facts establish a special relationship exception to the public duty doctrine.

*824 FACTS
Lewis County emergency dispatch received a 911 call under unusual circumstances in December 1997. The caller stated, "1018 "E" Street, heart attack," and hung up the phone. Clerk's Papers (CP) at 343. Unfortunately, the 911 operator could not exchange any information with the caller.
The operator attempted to call the number, but received a busy signal. Another dispatcher located and called the phone number of 1018 "E" Street, but an answering machine picked up the call. The enhanced 911 system electronically indicated that the call originated from a pay phone near a local grocery store. Moments before the "E" Street call, the dispatcher had received a prank call from the same location.
Given the call's circumstances, the 911 dispatcher did not notify or request emergency medical aid. Rather, the operator treated the call as a 911 hang up, which required that the police investigate the nature of the call and report back to the dispatcher. The operator stated to Centralia police: "911 hang up. All they said was heart attack, 1018 "E" Street and hung up. The call came from Ideal Food Center, 727 N. Tower, busy on the call back." CP at 343. The operator also informed police that another dispatcher had tried the number associated with 1018 "E" Street, but reached an answering machine.
A police officer quickly arrived at the local grocery store that the enhanced 911 system indicated was the location of the "E" Street call. The responding officer located a young man, known to police through prior contacts. Another officer had observed the young man hurrying away from the grocery store near the time of the hang up call. The officer asked the young man about the "E" Street 911 call, and the minor stated that he made it. The officer gave the young man a warning and cleared the call as a suspicious circumstance with the 911 dispatcher.[1] Although he had cleared the "E" Street call, the officer drove by 1018 "E" Street, but did not contact the homeowners.
About six hours later, police were informed that Cummins' husband had died in his home at 1018 "E" Street. The police officer who had cleared the "E" Street 911 call recontacted the young man who had admitted that he made the call at the grocery store. The minor now retracted that statement and told the officer that he lied because he assumed the officer would not believe him if he denied making the 911 call.
The police department investigated the enhanced 911 phone system and found that the system was both functioning properly and accurately identified that the "E" street call originated from the local grocery store. When Cummins called into the system to report finding her husband, the system had also properly identified that call as coming from 1018 "E" Street.
Cummins filed a damages claim with Centralia on behalf of her husband, she later was appointed her husband's personal representative, and in December 2000, she filed a wrongful death complaint.[2] Centralia and Lewis County moved for summary judgment, which the trial court granted. Cummins appeals the court's summary judgment dismissal of her lawsuit against Centralia and Lewis County.[3]

ANALYSIS

I. PUBLIC DUTY DOCTRINE AND SPECIAL RELATIONSHIP EXCEPTION
Cummins seeks reversal of the summary judgment, arguing that "this Court *825 should extend the special relationship exception to the public duty doctrine to individuals who dial 911 seeking emergency medical assistance." Br. of Appellant at 26.
A trial court should grant summary judgment if it determines, after viewing the entire record and drawing all reasonable inferences in favor of the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); Retired Pub. Employees Council of Wash. v. Charles, 148 Wash.2d 602, 612, 62 P.3d 470 (2003). We review a summary judgment order de novo, from the same position as the trial court. Charles, 148 Wash.2d at 612, 62 P.3d 470; see also Babcock v. Mason County Fire Dist. No. 6, 144 Wash.2d 774, 784, 30 P.3d 1261 (2001).

A. Public Duty Doctrine's Special Relationship Exception
Cummins criticizes the public duty doctrine as applied in Washington, citing Justice Chambers' concurrence in Babcock that critiques the doctrine. But Cummins does not dispute that "the Public Duty Doctrine is the law in Washington." Reply Br. of Appellant at 6. Indeed, the doctrine is a viable part of negligence actions against a government entity. See, e.g., Bratton v. Welp, 145 Wash.2d 572, 576, 39 P.3d 959 (2002). Cummins "acknowledges that under current Washington law a `special relationship' [exception to the public duty doctrine] was not created" to apply in her case, but requests that we expand this exception to apply to persons calling 911 for medical assistance. Reply Br. of Appellant at 6.
"The first hurdle in any negligence action is establishing a duty." Bratton, 145 Wash.2d at 576, 39 P.3d 959; see also Babcock, 144 Wash.2d at 784-85, 30 P.3d 1261 (citing Taylor v. Stevens County, 111 Wash.2d 159, 163, 759 P.2d 447 (1988)). The public duty doctrine requires that the plaintiff seeking recovery from a public entity or government employee demonstrate a breach of duty owed to the individual plaintiff, not "the breach of a general obligation owed to the public in general, i.e., a duty owed to all is a duty owed to none." Beal v. City of Seattle, 134 Wash.2d 769, 784, 954 P.2d 237 (1998).
There are four exceptions to the doctrine; however, only the special relationship exception applies here. Babcock, 144 Wash.2d at 785-86, 30 P.3d 1261. This exception applies where:
(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff.
Beal, 134 Wash.2d at 785, 954 P.2d 237 (quoting Taylor, 111 Wash.2d at 166, 759 P.2d 447) (emphasis added).
Here, Cummins does not produce material facts establishing a special relationship exception under the public duty doctrine. There is no evidence in the record that any Centralia police officer had contact with Cummins' husband, or someone calling on his behalf, during the 911 call. Thus, Centralia police could not provide express assurances that Cummins' husband relied on. Similarly, the record fails to demonstrate a special relationship between Cummins' husband and the Lewis County dispatcher. The dispatcher received a 911 call that stated, "1018 "E" Street, heart attack," and hung up before she could respond. CP at 343. Consequently, the dispatcher made no contact or statement, express or implied, that Cummins' husband relied on.
These facts are distinct from cases finding a special relationship in the context of a 911 call. See, e.g., Bratton, 145 Wash.2d at 575, 39 P.3d 959 (caller made numerous calls to 911 and operator promised assistance); Beal, 134 Wash.2d at 774, 954 P.2d 237 (911 dispatcher told caller that" `we're going to send somebody there'" and "`[w]e'll get the police over there for you okay?'"); Chambers-Castanes v. King County, 100 Wash.2d 275, 284, 669 P.2d 451 (1983) (plaintiff called 911 numerous times and operator promised police would arrive).
Cummins' arguments to extend this case law and find a special relationship under the *826 public duty doctrine to the facts here are unpersuasive. She asserts that the enhanced 911 system automatically creates privity between the caller and the operator by electronically identifying the call's location and eliminating the caller's need to speak to the operator. Although we broadly interpret privity under the special relationship exception, it is reasonable to require some form of human communication between the 911 caller and the operator. See Babcock, 144 Wash.2d at 788, 30 P.3d 1261 (finding privity between a firefighter's single statement made personally to the plaintiff). Further, Cummins' privity argument ignores the facts here: the enhanced phone system accurately identified the "E" Street call as coming from a public phone located at the grocery store on N. Tower Street.[4]
Cummins argues that the special relationship exception's second element, requiring express assurance from a public official, is satisfied "hundreds of times by government entities on a daily basis" that describe the 911 system through yellow pages, billboards, and radio and TV public service announcements. Br. of Appellant at 17-18. This overbroad argument fails to cite to the record, contradicts the public duty doctrine's central requirement that liability not attach to a government entity's duty to the public at large, and conflicts with all four of the doctrine's exceptions that require a reasonable degree of specificity.
Finally, Cummins contends that the legislative intent in creating and providing funding to communities for the enhanced 911 system establishes the necessary reliance under the special relationship exception.[5] But RCW 38.52.500 seeks to provide a "statewide" enhanced 911 system "to further the safety, health, and welfare of this state's citizens." (Emphasis added). An individual cannot rely on such broad language in a tort action against a public entity. See, e.g., Honcoop v. State, 111 Wash.2d 182, 188, 759 P.2d 1188 (1988). Further, nothing in the enhanced 911 statute discusses an automatically actionable legal duty owed by a governmental entity that adopts the system for its community.
Thus, because Cummins' broad arguments for an extension of the public duty doctrine's special relationship exception requires a dramatic departure from case law discussing this exception, we decline Cummins' invitation.[6]

B. Community Caretaking Function
Cummins further argues that we should review the responding police officer's actions here as a community caretaking function, not a law enforcement duty. Centralia and Lewis County emphasize that the community caretaking function is a criminal law doctrine and inapplicable to a civil tort action.
The community caretaking function is one aspect of a police officer's multiple duties to perform emergency aid or a routine check on health and safety; however, it is evaluated as a criminal law exception to the warrant requirement. State v. Acrey, 148 Wash.2d 738, 749, 64 P.3d 594 (2003).
In 1997, Lewis County's policy regarding a 911 hang up was the following:[7]
If we [the police] were notified of a 911 hang-up, our procedure would be to respond to that, to check the welfare of anyone at the residence the call originated from and to try to determine why the call *827 was made, if there is not some kind of an emergency.
CP at 339-40.
The dispatcher was not required to request medical personnel or assistance for such calls, rather the police officer investigated the situation and notified the dispatcher of the disposition. Cummins contends that the dispatcher erred in identifying the "E" Street call as a hang up and ignored the call's unique circumstances.
The dispatcher's request to Centralia police about the "E" Street 911 call involved potential criminal activity relating to a call reporting a potential medical emergency. But regardless of whether the police officer's response falls under a community caretaking or law enforcement function, a plaintiff seeking damages in a civil tort action in this context must still demonstrate that the police had a duty of care under the public duty doctrine. Additionally, the facts here are more akin to situations where police respond to potential criminal activity: a prank call occurred moments before the heart attack call; the emergency dispatch system identified that both calls came from a local grocery store; the police were not instructed to perform medical aid, but rather to investigate the situation; police quickly located a person at the grocery store who stated that he made a 911 prank call; and the police cleared the call with the dispatcher. See e.g., Bratton, 145 Wash.2d at 575, 39 P.3d 959; Torres v. City of Anacortes, 97 Wash.App. 64, 74, 981 P.2d 891 (1999).
Thus, given the facts here, we decline Cummins' request to label the police conduct as a community caretaking function. To do so also risks confusing central principles of the public duty doctrine and criminal law jurisprudence regarding search warrant exceptions.
In summary, because Cummins failed to show material facts establishing a special relationship exception under the public duty doctrine, Centralia and Lewis County are immune from civil liability and the trial court did not err in granting their motion for summary judgment.[8]
We affirm.
We concur: MORGAN, A.C.J., and HUNT, J.
NOTES
[1] A transcript of the conversation between the officer and the 911 dispatcher provides:

[police officer]: The little kid made the call, ah disposition 861CHW.
[911 dispatcher]: That was a little kid's voice?
[police officer]: Yea, he made it sound as old as he could, he had a sucker in his mouth.
[911 dispatcher]: Well that little brat. Uhm go ahead with the dispo' again.
[police officer]: 861CHW.
CP at 349.
[2] The record does not indicate if Cummins filed a damages claim with Lewis County.
[3] Cummins states that the trial court granted summary judgment in favor of Centralia and Lewis County because of her failure to establish a special relationship under the public duty doctrine. At oral argument, Centralia's counsel confirmed this assertion. Additionally, Cummins' amended complaint included numerous parties that were dismissed, but are unchallenged on appeal.
[4] Cummins also contends that privity is established through the principal and agent relationship of the Centralia police department and the Lewis County dispatcher; however, Cummins cites no legal authority for this assertion and we do not review this claim.
[5] Cummins does not rely on the legislative intent exception on appeal. See Reply Br. of Appellant at i ("Plaintiff is not arguing for a Legislative Intent Exception to the Public Duty Doctrine.").
[6] Cummins briefly argues that Lewis County is not immune because the dispatcher was involved in operational functions; however, immunity in that context is irrelevant to the public duty doctrine. Beal v. City of Seattle, 134 Wash.2d 769, 784, 954 P.2d 237 (1998).
[7] The record indicates that in 1997 there was no written policy for 911 hang up calls.
[8] Centralia and Lewis County raise other claims as alternative bases for dismissal of Cummins' complaint, such as Cummins' second amended compliant is barred by limitations because it fails to relate back under CR 15(c) to the first amended complaint and that she improperly filed a claim for damages under RCW 4.96.010 and .020. Because we hold that Cummins did not show an actionable duty under the public duty doctrine, we do not reach those arguments.