## NOTICE: SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 12, 2023

_Gonzáles, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 12, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| DELAURA NORG, as Litigation Guardian ad Litem for her husband, FRED B. NORG, an incapacitated man, and DELAURA NORG, individually, | ) ) ) ) ) ) | No. 100100-2<br><br>En Banc |
| Respondents, | ) ) | |
| v. | ) ) | |
| CITY OF SEATTLE, | ) ) | |
| Petitioner. | ) ) | Filed: January 12, 2023 |
| _____ | ) | |

YU, J. — This case asks whether the public duty doctrine shields the city of

Seattle (City) from potential liability for its allegedly negligent response to a 911

call.  In this case, it does not.

Delaura Norg called 911 seeking emergency medical assistance for her

husband, Fred.  She gave the 911 dispatcher her correct address, which the

dispatcher relayed to emergency responders from the Seattle Fire Department

(SFD).  The Norgs' apartment building was three blocks away from the nearest

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

SFD station, but it took emergency responders over 15 minutes to arrive. This delay occurred because the SFD units failed to verify the Norgs' address and, instead, went to a nearby nursing home based on the mistaken assumption that the Norgs lived there. The Norgs sued the City for negligence, alleging that SFD's delayed response aggravated their injuries.

The City pleaded the public duty doctrine as an affirmative defense and both parties moved for summary judgment on the question of duty. The trial court granted partial summary judgment in the Norgs' favor and struck the City's affirmative defense. The Court of Appeals affirmed on interlocutory review. We granted review and now affirm.

The undisputed facts establish that once the City undertook its response to the Norgs' 911 call, the City owed the Norgs an actionable, common law duty to use reasonable care. The Norgs' claim is based on the City's alleged breach of this common law duty and is therefore not subject to the public duty doctrine as a matter of law. As a result, we hold that the trial court properly granted partial summary judgment to the Norgs on the question of duty. In doing so, we express no opinion on the remaining elements of the Norgs' claim (breach, causation, and damages). We thus affirm the Court of Appeals and remand to the trial court for further proceedings.

*Norg v. City of Seattle*, No. 100100-2

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.    Factual background

For purposes of the issues presented, the underlying facts are not disputed. Early in the morning on February 7, 2017, Delaura woke up to find Fred "making really loud sounds."[1]  Clerk's Papers at 147.  Fred's "eyes were wide open and glassy," and he did not respond to Delaura's attempts to wake him.  *Id.*  Delaura called 911, and she was connected to a dispatcher employed by SFD at 4:42 a.m. The dispatcher immediately asked for the Norgs' address, which Delaura accurately provided.

Within one minute of answering Delaura's call, the 911 dispatcher assigned three units from two nearby SFD stations to respond.  The dispatcher gave the units the Norgs' correct address, which was three blocks away from the closest station. *Id.* at 215, 99.  The units left their respective stations between 4:44 and 4:46 a.m., and the dispatcher assured Delaura that "a lot of people [were] on the way."  *Id.* at 176.  While she waited, Delaura confirmed her address to the dispatcher twice, and she followed the dispatcher's instructions to move Fred to the floor and begin cardiopulmonary resuscitation.

---

[1] Where it is necessary to distinguish between the Norgs, we refer to them by their first names.  No disrespect is intended.

3

*Norg v. City of Seattle*, No. 100100-2

By 4:49 a.m., all three of the dispatched units signaled that they were "[o]n [s]cene." *Id.* at 215. However, they were not at the Norgs' apartment. Instead, the units mistakenly assumed the 911 call had come from "a nursing home in the [same] area that gets many alarms throughout the year," and they went there instead, driving past the Norgs' apartment building to do so. *Id.* at 80. When the emergency responders arrived at the nursing home, they found no indication of a medical emergency and realized they had gone to the wrong address.

The units then went back to the Norgs' apartment building. After struggling to gain access, emergency responders reached the Norgs approximately 16 minutes after Delaura began speaking with the 911 dispatcher. *Id.* at 185. Fred was transported to the hospital, where he was diagnosed with a heart attack. He survived but allegedly suffered "severe and permanent injuries," including brain damage due to a lack of oxygen, resulting in "cognitive deficits and impaired vision, balance[,] and ambulation." *Id.* at 10.

B.      Procedural history

On October 12, 2018, the Norgs filed a complaint against the City, claiming that its employees were "negligent in failing to use reasonable care in responding to the Norgs' 911 medical emergency." *Id.* They allege this negligence caused damages including medical expenses, pain and suffering, emotional distress, and lost wages and earning capacity. *Id.* at 10-11. In its answer to the Norgs'

4

*Norg v. City of Seattle*, No. 100100-2

complaint, the City asserted as one of its "affirmative defenses" that the Norgs' "claims are barred by the public duty doctrine."[2]  *Id.* at 20-21.

The Norgs moved for partial summary judgment to strike the City's "'public duty' defenses and to rule that the City owed the Norgs a common law duty of reasonable care while responding to Mr. Norg's cardiac arrest."  *Id.* at 23.  The City also moved for summary judgment, contending that it cannot be held "liable for a 911 call response unless an exception to the public duty doctrine applies" and that "there are no questions of fact regarding an exception."  *Id.* at 104-05.  Following oral argument, the trial court granted the Norgs' motion and denied the City's motion, concluding that the "City of Seattle owed plaintiffs a duty of ordinary care" and striking the City's "affirmative defenses" relating to the public duty doctrine.  *Id.* at 541.

On the City's motion, the trial court certified its order for interlocutory review, ruling that the application of the public duty doctrine to this case is "a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the

---

[2] In its brief supporting review, amicus contends that the Court of Appeals "erred by characterizing the public duty doctrine as an affirmative defense" and asks this court "to clarify that the defendant does not have the burden to prove that the public duty doctrine bars a claim." Mem. of Amicus Curiae Wash. State Ass'n of Mun. Att'ys at 11 (citing *Norg v. City of Seattle*, 18 Wn. App. 2d 399, 401, 491 P.3d 237 (2021)), 13.  We did not grant review on that issue, and we decline to reach it because it was the *City's answer* to the Norgs' complaint that characterized the public duty doctrine as an affirmative defense; the Court of Appeals merely provided an accurate description of this procedural history.

5

*Norg v. City of Seattle*, No. 100100-2

ultimate termination of the litigation." *Id.* at 470; *see* RAP 2.3(b)(4). The Court of Appeals granted the City's motion for discretionary review and affirmed in a published opinion, holding that the public duty doctrine does not apply here because the City owed the Norgs "a common law duty to exercise reasonable care in providing emergency medical services." *Norg v. City of Seattle*, 18 Wn. App. 2d 399, 403, 491 P.3d 237 (2021).

The City moved for discretionary review, and the Washington State Association of Municipal Attorneys filed an amicus brief supporting the City's motion. After we granted review, the Washington State Association for Justice Foundation filed an amicus brief supporting the Norgs on the merits.

ISSUE

Whether the public duty doctrine bars the Norgs' negligence claim against the City.

ANALYSIS

A.  Background on the public duty doctrine

Courts in Washington have been developing and applying the public duty doctrine for decades. However, the doctrine has taken a "sometimes wandering path," and as a result, parties and courts (including this court) have at times "struggle[d] with the case law." *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020). We therefore take this opportunity to review the history and

6

*Norg v. City of Seattle*, No. 100100-2

purpose of the public duty doctrine to provide context for our decision here and clarity for future cases.

Historically, courts in the United States applied the "rule that a State could not be sued without its consent," which was derived from "[t]he sovereign immunity of the British crown." RESTATEMENT (SECOND) OF TORTS § 895B cmt. a (AM. L. INST. 1979). This historical rule is "implicitly acknowledged" in the Washington Constitution, which provides that "'[t]he legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state.'" Debra L. Stephens & Bryan P. Harnetiaux, *The Value of Government Tort Liability: Washington State's Journey from Immunity to Accountability*, 30 SEATTLE U. L. REV. 35, 37 (2006) (quoting CONST. art. II, § 26). A more limited form of sovereign immunity was also extended to local government entities "when they were performing 'governmental functions' similar to those performed by the state." Stephens & Harnetiaux, *supra*, at 38.

Amid growing criticism of sovereign immunity, our legislature in the 1960s exercised its constitutional authority to allow tort claims against state and local government entities in Washington. *See* LAWS OF 1961, ch. 136, § 1 (codified as RCW 4.92.090), *amended by* LAWS OF 1963, ch. 159, § 2; LAWS OF 1967, ch. 164, § 1 (codified as RCW 4.96.010). However, this does not mean that the government's potential tort liability is unlimited. Instead, governmental entities

7

*Norg v. City of Seattle*, No. 100100-2

"shall be liable for damages arising out of their tortious conduct . . . to the same extent as if they were a private person or corporation." RCW 4.96.010(1) (local governments); *see also* RCW 4.92.090 (state government). To be held liable in accordance with these statutes, a governmental entity must engage in tortious conduct that is "'analogous, in some degree at least, to the chargeable misconduct and liability of a private person or corporation.'" *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 887, 288 P.3d 328 (2012) (Chambers, J., concurring) (quoting *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 253, 407 P.2d 440 (1965)). Justice Chambers's concurrence in *Munich* is "precedential because it received five votes from justices who also signed the majority opinion." *Ehrhart*, 195 Wn.2d at 398 n.5; *see also Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550 n.8, 442 P.3d 608 (2019). The dissent appears to disagree with *Ehrhart*, *Beltran-Serrano*, and the *Munich* concurrence itself, but those decisions are all controlling precedent. *See* dissent at 4-6.

One significant challenge in determining whether a governmental entity may be liable in any particular case is that "governments, unlike private persons, are tasked with duties that are not actionable duties within the meaning of tort law." *Beltran-Serrano*, 193 Wn.2d at 549. These "special governmental obligations are imposed by statute or ordinance," and they reflect "a general obligation owed to the public" by the governmental entity. *Id.* Such general governmental obligations

8

are not actionable in tort because "'a duty to all is a duty to no one'" and a "'cause of action for negligence will not lie unless the defendant owes a duty of care to [the] plaintiff.'" *Osborn v. Mason County*, 157 Wn.2d 18, 27, 134 P.3d 197 (2006) (quoting *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001) (plurality opinion)); *Ehrhart*, 195 Wn.2d at 398 (alteration in original) (quoting *Chambers-Castanes v. King County*, 100 Wn.2d 275, 284, 669 P.2d 451 (1983)).

Thus, a governmental entity's breach of a duty owed to the general public cannot sustain a tort claim for negligence as a matter of law. Instead, "[t]o establish a duty in tort against a governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public." *Beltran-Serrano*, 193 Wn.2d at 549. To determine whether any particular plaintiff has made the necessary showing, Washington courts have attempted to construct a framework around the "public duty doctrine." *Chambers-Castanes*, 100 Wn.2d at 287.

The public duty doctrine operates as "a focusing tool" to ensure that governmental entities may be held liable only "to the *same* extent as if they were a private person or corporation." *Ehrhart*, 195 Wn.2d at 398; RCW 4.96.010(1) (emphasis added). To accomplish this, the public duty doctrine provides "a mechanism for focusing upon whether a duty is actually owed to an individual

9

claimant rather than the public at large." *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 304-05, 669 P.2d 468 (1983), *overruled on other grounds by Meaney v. Dodd*, 111 Wn.2d 174, 759 P.2d 455 (1988). If the duty that the government allegedly breached was owed to the public at large, then the public duty doctrine applies; if the duty was owed to an individual, then the public duty doctrine does not apply. This is a potentially "dispositive" issue because if the public duty doctrine applies, the negligence claim must be dismissed for lack of an actionable duty unless there is an applicable exception. *Ehrhart*, 195 Wn.2d at 396.

The four exceptions to the public duty doctrine are "(1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship." *Munich*, 175 Wn.2d at 879. However, "an enumerated exception is not always necessary to find that a duty is owed to an individual and not to the public at large" because the public duty doctrine does not apply to every tort claim against a governmental entity. *Beltran-Serrano*, 193 Wn.2d at 549.

Instead, the public duty doctrine applies only to claims based on an alleged breach of "special governmental obligations [that] are imposed by statute or ordinance." *Id.* "As to common law negligence, . . . '[t]his court has never held that a government did not have a *common law* duty solely because of the public duty doctrine.'" *Id.* at 549-50 (second alteration in original) (quoting *Munich*, 175 Wn.2d at 886-87 (Chambers, J., concurring)). Therefore, the public duty doctrine

*Norg v. City of Seattle*, No. 100100-2

is inapplicable to common law negligence claims, even if a governmental entity is the defendant. *Id.*; *see also Mancini v. City of Tacoma*, 196 Wn.2d 864, 885-86, 479 P.3d 656 (2021) (holding that in "a case of affirmative misfeasance, all individuals have a duty to exercise reasonable care," including police officers executing a search warrant). In claiming that "no precedent from this court supports" our assertion that public duties are imposed by statute or ordinance, the dissent appears to overlook, or simply disagree with, our holdings in *Beltran-Serrano* and *Mancini*. Dissent at 4.

Thus, to determine whether the public duty doctrine bars the Norgs' claim, as the City contends it does, we must identify the duty that the City allegedly breached and determine whether that duty is based on a generally applicable statute or an individually applicable common law duty. If the duty is based on the common law and owed to the Norgs individually, then the public duty doctrine does not apply, our analysis ends, and we must affirm. If the duty is based on a statute and owed to the public generally, then the public duty doctrine applies and we must determine whether there are any applicable exceptions. If an exception applies, we must affirm; if no exception applies, we must reverse.

In reviewing the trial court's order on partial summary judgment, "this court engages in the same inquiry as the trial court." *Cummins v. Lewis County*, 156

11

Wn.2d 844, 852, 133 P.3d 458 (2006). "[W]hether an actionable duty was owed to the plaintiff represents a question of law," which is "reviewed [de] novo." *Id.*

B.     The public duty doctrine does not apply here because the Norgs allege that the City breached a common law duty owed to them individually, not a statutory duty owed to the general public

The City contends that this court's precedent bars the Norgs' claim because "government 911 dispatch cases inherently fall within the public duty doctrine." City of Seattle's Mot. for Discr. Rev. at 2 (analyzing *Cummins*, 156 Wn.2d 844). By contrast, the Norgs contend that the public duty doctrine does not apply because "the City's duty arises from its direct and particularized interaction with these particular plaintiffs." Answer to Pet. for Rev. at 14. The trial court and the Court of Appeals agreed with the Norgs. *See* Hr'g on Mots. (Nov. 8, 2019) at 46-47; *Norg*, 18 Wn. App. 2d at 408-09. Based on the particular claim at issue in this case, we affirm.

1.     *Cummins* does not control the analysis or outcome here

The City and the dissent rely heavily on *Cummins* to argue that the public duty doctrine applies to every tort claim based on an allegedly negligent 911 response. However, this broad, categorical reading of *Cummins* cannot be reconciled with our analysis and holdings in that case.

The plaintiff in *Cummins* brought a tort claim against Lewis County based on the alleged negligence of a "911 emergency dispatch unit" in responding to a

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

call for emergency medical assistance. 156 Wn.2d at 850. This court "conclud[ed]

that there is neither a statutory nor a common law duty on the part of a county to

dispatch medical aid under [the] circumstances" presented, and we therefore

affirmed the order of "summary judgment dismissing the petitioner's wrongful

death action." *Id.* at 848.

The City and the dissent contend that *Cummins* stands for the broad

proposition that "the government *has no common law duty to respond to 911 calls*,

and absent an exception to the public duty doctrine, a negligence claim regarding a

911 response to [a] heart attack caller fail[s] as a matter of law." City of Seattle's

Suppl. Br. at 12; *see also* dissent at 7-9 & n.3. This is incorrect. Like any opinion,

*Cummins* must be read in the context of the particular facts, procedure, and legal

arguments presented. *Cf. State v. Molnar*, 198 Wn.2d 500, 515, 497 P.3d 858

(2021) ("'But the first rule of case law as well as statutory interpretation is: Read

on.'" (quoting *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 36, 133 S.

Ct. 511, 184 L. Ed. 2d 417 (2012))).

Factually, *Cummins* addressed a situation in which "an individual places a

'911 call,' identifies the nature of [their] medical emergency, provides a street

address but not [their] name, and 'hangs up' prior to either requesting help or

receiving an oral assurance from the operator that medical aid will be dispatched."

156 Wn.2d at 848. Procedurally, the plaintiff in *Cummins* "sought this court's

13

review only on the questions of whether a special relationship with the county had been established and whether the express assurance requirement needed to establish that particular relationship be eliminated or relaxed for medical emergency callers." *Id.* at 851. As noted above, such a "special relationship" is one of the exceptions to the public duty doctrine. *Munich*, 175 Wn.2d at 879. Thus, the parties in *Cummins* assumed that the public duty doctrine applied and focused their arguments on whether there was an applicable exception.[3] Finally, on the merits of her claim, the plaintiff in *Cummins* did not contend that the county owed her any common law duty. Instead, the plaintiff "assert[ed] that RCW 38.52.500 [(the E911 statute)] provides a 911 medical-emergency caller with an implicit promise that the government entity fielding the call will 'provide a rapid response.'" *Cummins*, 156 Wn.2d at 853 n.6.

Each of these aspects of the *Cummins* case limits the applicability of our opinion there. Factually, *Cummins* distinguishes between cases in which a 911

---

[3] The dissent acknowledges that "this court did not expressly hold that the public duty doctrine applied" in *Cummins*, but it nevertheless asserts that "this holding inhered in our decision" based on the Court of Appeals opinion in that case. Dissent at 8 (citing *State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008)). However, the Court of Appeals opinion, like our own, started from the assumption that the public duty doctrine applied and considered only whether to "expand" the exception for special relationships. *Cummins v. Lewis County*, 124 Wn. App. 247, 253, 98 P.3d 822 (2004). Moreover, even if the dissent's characterization were accurate, that would merely establish the "law of the case" in *Cummins*. *Schwab*, 163 Wn.2d at 672. The law of the case doctrine "provides that once there is an appellate court ruling, its holding must be followed in all of the subsequent stages of the *same* litigation." *Id.* (emphasis added). It does not transform every appellate ruling into a precedential holding by this court.

caller has an extensive interaction with the dispatcher and cases in which the "caller hung up the telephone before the dispatcher could obtain additional information and before [they] could respond." *Id.* at 848. Procedurally, *Cummins* adheres to the "well-established maxim that this court will generally not address arguments raised for the first time in a supplemental brief and not made originally by the petitioner or respondent within the petition for review or the response to petition." *Id.* at 851. And legally, *Cummins* holds that "[a]t most, the E911 statute imposes upon Washington's counties an obligation to have in place an enhanced 911 system by December 31, 1998." *Id.* at 853 n.6 (analyzing RCW 38.52.500-.510). These limitations clearly distinguish *Cummins* from the case presented here.

Unlike the 911 caller in *Cummins*, it is undisputed that Delaura Norg expressly requested help, remained on the phone with the 911 dispatcher for over 15 minutes, was assured by the dispatcher that medical aid was on the way, and confirmed her address to the dispatcher multiple times. Unlike the parties in *Cummins*, the parties here have timely and properly raised their contentions on the threshold question of whether the public duty doctrine applies to the Norgs' claim. And unlike the plaintiff in *Cummins*, the Norgs do not claim that the City breached any duty imposed by a statute. Instead, as discussed further below, the Norgs claim that the City breached a common law duty of reasonable care that applies equally to governmental and private entities.

15

As a result, holding that *Cummins* controls the outcome of this case, as the City and dissent would have us do, would "carv[e] out an exception to ordinary tort liability for governmental entities," contrary to the plain language of RCW 4.96.010(1). *Beltran-Serrano*, 193 Wn.2d at 550; *see also* RCW 4.92.090. We decline to do so. The significant differences between *Cummins* and this case require us to conduct an independent analysis.

2.     The Norgs' claim is based on the City's alleged breach of a common law duty owed to the Norgs individually

As discussed above, to determine whether the public duty doctrine applies to this case, we must determine what duty the City allegedly breached and whether that duty was owed to the Norgs individually or to the general public. It is clear from the nature of the Norgs' claim that it is based on an alleged breach of the City's common law duty to use reasonable care, which was owed to the Norgs individually. Therefore, the public duty doctrine does not apply as a matter of law.

This court has previously recognized that "[a]t common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others." *Beltran-Serrano*, 193 Wn.2d at 550. Moreover, although generally there is "no legal duty to come to the aid of a stranger," a common law duty of reasonable care "arises when one party voluntarily begins to assist an individual needing help." *Folsom v. Burger King*, 135 Wn.2d 658, 674-75, 958 P.2d 301 (1998); *see also Brown v. MacPherson's, Inc.*, 86 Wn.2d 293,

16

*Norg v. City of Seattle*, No. 100100-2

299, 545 P.2d 13 (1975). Here, the Norgs assert that the City owed them a duty of reasonable care once "the City, through its dispatcher, established a direct and particularized relationship with the Norgs" and that the City breached this duty. Suppl. Br. of Resp'ts at 24. Accordingly, the Norgs contend that the public duty doctrine cannot bar their claim because "'[t]his court has never held that a government did not have a *common law* duty solely because of the public duty doctrine.'" *Id.* at 11 (alteration in original) (internal quotation marks omitted) (quoting *Beltran-Serrano*, 193 Wn.2d at 549-50).

By contrast, the City contends that the only duty at issue in this case is a nonactionable duty owed to the general public, which is imposed by statute or regulation. Primarily, the City contends that *Cummins* is "determinative" as to the nature of the duty in this case. City of Seattle's Suppl. Br. at 15. According to the City, RCW 38.52.500 (the E911 statute) "provides a statutory basis for the City to provide 911 medical services, as it did in *Cummins*," so the public duty doctrine must apply, as it did in *Cummins*. *Id.* at 16. However, as discussed above, *Cummins* does not control the analysis here. Moreover, an examination of the Norgs' claim clearly shows that they do not rely on the E911 statute.

The E911 statute provides,

The legislature finds that a statewide emergency communications network of 911 telephone service, which allows an immediate display of a caller's identification and location, would serve to further the safety, health, and welfare of the state's citizens, and would save

17

> lives. The legislature, after reviewing the study outlined in section 1,
> chapter 260, Laws of 1990, further finds that statewide
> implementation of 911 telephone service is feasible and should be
> accomplished as soon as practicable.

RCW 38.52.500. The City is correct to the extent that *Cummins* precludes tort

claims based on a governmental entity's breach of the E911 statute unless there is

an applicable exception to the public duty doctrine. *See Cummins*, 156 Wn.2d at

853 n.6. However, no such claim is presented here. The Norgs do not claim that

the City failed to operate a 911 telephone service. They do not claim that the City

failed to accomplish its implementation of a 911 service as soon as practicable.

They do not claim that the City failed to answer their 911 call or violated any

"implicit promise under the E911 statute to promptly dispatch medical aid to save

the caller's life." *Id.* They do not claim the City violated its public duty to respond

to 911 calls by "choos[ing] to withhold their services." *Contra* dissent at 3.

Instead, the Norgs claim that the City answered their 911 call and undertook

to render emergency assistance, but that the City acted negligently in doing so by

going to the wrong address. Such a claim could certainly arise against a private

ambulance service, given that "emergency medical assistance is not a unique

function of government."[4] *Id.* at 872 (Chambers, J., concurring). And if such a

claim arose against a private entity, it would certainly not be dismissed for lack of

---

[4] The dissent disagrees based on an analysis of governmental and proprietary functions. Dissent at 9-12. The parties have not briefed that issue, and we decline to address it.

18

an actionable duty because, as the Court of Appeals correctly recognized,

"[p]rivate ambulance service providers, providing emergency medical services,

have historically been subjected to civil suit for negligence." *Norg*, 18 Wn. App.

2d at 409 (citing *Vogreg v. Shepard Ambulance Co.*, 47 Wn.2d 659, 289 P.2d 350

(1955); *Scott v. Rainbow Ambulance Serv., Inc.*, 75 Wn.2d 494, 452 P.2d 220

(1969)). Thus, barring the Norgs' claim solely because it is made against a

governmental ambulance service would mean that the governmental entity is

subject to *less* tort liability than a comparable private entity, rather than "the *same*"

tort liability, as required by our legislature. RCW 4.96.010(1) (emphasis added);

*see also* RCW 4.92.010.

In addition to the E911 statute, the City contends that "the Fire Department's

budget constitutes an ordinance sufficient to support the conclusion that providing

SFD emergency 911 dispatch services is a general duty." City of Seattle's Suppl.

Br. at 17. However, the budget ordinance merely funds the City's 911 dispatch

system. The Norgs do not claim that the City breached any obligation imposed by

the budget ordinance, and the City does not claim that the ordinance contains any

substantive requirements about the City's obligations, or lack thereof, when

responding to any particular 911 call.

Thus, the Norgs' claim is based on the City's alleged breach of its common

law duty to exercise reasonable care when responding to their call for emergency

19

*Norg v. City of Seattle*, No. 100100-2

medical assistance.  The City does not point to any statute supplanting this common law duty.  As a result, based on the undisputed facts, the public duty doctrine does not apply to the Norgs' claim as a matter of law.  We need not consider whether any of the doctrine's exceptions apply.

CONCLUSION

The Norgs have established that the City owed them an individualized, actionable duty of reasonable care when it undertook to respond to their 911 call.  The Norgs' negligence claim is based solely on the City's alleged breach of this common law duty.  Therefore, although we express no opinion as to whether the Norgs will be ultimately be able to prevail on their claim, we hold that the public duty doctrine does not apply.  We affirm the Court of Appeals and remand to the trial court for further proceedings.

Yu, J.

WE CONCUR:

González, C.J.

Stephens, J.

Gordon McCloud, J.

Whitener, J.

*Norg v. City of Seattle*

No. 100100-2

MADSEN, J. (dissenting)—Performing ambulance and emergency medical services (EMS) is, as Washington lawmakers have recognized, essential for the health, safety, and welfare of the people—the embodiment of a governmental function to which the public duty doctrine applies. But, the majority appears to disapprove of the doctrine and, in its haste to pull teeth from the public duty doctrine, ascribes to the philosophy of "move fast and break things."[1]

Torturing our rules of precedent, the majority attempts to distinguish this court's opinion in *Cummins v. Lewis County*, which is directly on point. 156 Wn.2d 844, 133 P.3d 458 (2006). Repeatedly claiming that *Cummins* is "different" does not make it so. Contrary to this court's holding in *Cummins*, the majority concludes that municipal EMS providers owe a common law duty of reasonable care in responding to 911 calls. *See* majority at 8-9, 15, 17-18. Rather than straightforwardly applying precedent, the majority relies on pronouncements made in concurrences from past cases and accepts

---

[1] The former motto of Meta Platforms (more popularly known as Facebook). *See, e.g.*, Hemant Taneja, *The Era of 'Move Fast and Break Things' Is Over*, HARV. BUS. REV. (Jan. 22, 2019), https://hbr.org/2019/01/the-era-of-move-fast-and-break-things-is-over [https://perma.cc/8CM8-9BBD].

No. 100100-2
Madsen, J., dissenting

them as settled law, rewriting the public duty doctrine to apply only when duties are imposed on government entities by statute or ordinance—creating virtually limitless liability.

While I agree that the courtroom is often the best forum to resolve disputes, courts have developed the public duty doctrine in recognition that government liability *is not unlimited*. *Evangelical United Brethren Church of Adna v. State*, 67 Wn.2d 246, 252-53, 407 P.2d 440 (1965); *Taylor v. Stevens County*, 111 Wn.2d 159, 170, 759 P.2d 447 (1988). In its haste to limit the doctrine, the majority reimagines and then declaws the public duty doctrine such that it is now practically inert. I disagree and respectfully dissent.

1. The City of Seattle owes a duty to *all* its citizens to respond to 911 calls, not only to Delaura and Fred Norg

The majority concludes that the city of Seattle breached its common law duty of care owed to the Norgs individually by way of the duty to rescue, thus making the public duty doctrine inapplicable. Majority at 15-16. I cannot agree. "The first hurdle in any negligence action is establishing a duty." *Bratton v. Welp*, 145 Wn.2d 572, 576, 39 P.3d 959 (2002). As we have repeatedly recognized, the public duty doctrine "stands for a basic tenet of common law [that] '[a] cause of action for negligence will not lie unless the defendant owes a duty of care to [the] plaintiff,'" not the breach of a general obligation owed to the public in general. *Ehrhart v. King County*, 195 Wn.2d 388, 398, 460 P.3d 612 (2020) (third alteration in original) (quoting *Chambers-Castanes v. King County*, 100 Wn.2d 275, 284, 669 P.2d 451 (1983)).

2

No. 100100-2
Madsen, J., dissenting

In my view, the question of duty is simple: the Seattle Fire Department owes a general duty to respond to all residents who dial 911. That is, the city of Seattle owes a duty to *all*. Unlike private ambulance companies that are compensated for their services, municipally run and taxpayer-funded EMS providers cannot choose to withhold their services. City of Seattle's Suppl. Br. at 16-17 (stating that the Seattle City Council adopts an annual budget for the fire department, including its 911 dispatch service, which is paid by general tax revenue for the *benefit of all Seattle citizens* and is not supported by a fee for service); *see also Frequently Asked Questions*, MEDIC ONE FOUND., https://www.mediconefoundation.org/about/faqs/ ("Medic One services rely on a voter-approved tax levy to fund operating costs, including vehicles, paramedic salaries, equipment, and supplies.").

I disagree with the majority because the basic question of duty has not been proved here. The Norgs have not shown that any duty was owed to them as individuals. *See Taylor*, 111 Wn.2d at 163. A broad and general responsibility to the public rather than to individual members of the public does not create a duty of care. *See Osborn v. Mason County*, 157 Wn.2d 18, 28, 134 P.3d 197 (2006) (quoting *Campbell v. City of Bellevue*, 85 Wn.2d 1, 9, 530 P.2d 234 (1975)). Based on the Norgs' argument, I would hold that the public duty doctrine is available to the city of Seattle.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100100-2
Madsen, J., dissenting

2. The majority relies on unsupported pronouncements from past concurrences and treats them as settled law

I depart from the majority on the fundamental question of whether the city of Seattle owes an individual duty to the Norgs (it does not). I also disagree with the pathway the majority takes in answering this question.

For the first time, a majority of this court claims that the public duty doctrine "applies *only* to claims based on an alleged breach of 'special governmental obligations [that] are imposed by statute or ordinance.'" Majority at 10 (emphasis added) (alteration in original) (quoting *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 549, 442 P.3d 608 (2019)). Yet no precedent from this court supports the majority's assertion. So how did we get to this narrow and unprecedented conception of the public duty doctrine?

The twisted road begins with a pronouncement in a concurrence by Justice Chambers in *Munich v. Skagit Emergency Communications Center*, 175 Wn.2d 871, 886, 288 P.3d 328 (2012)—that "the *only* governmental duties we have limited by application of the public duty doctrine are duties imposed by a statute, ordinance, or regulation." (Emphasis added.) Never mind that this startling pronouncement is in a *concurrence*, not a *majority*—let us reconstruct the journey. Since the majority's first wrong step begins with the *Munich* concurrence, so must I.

As support for its pronouncement, the *Munich* concurrence begins by identifying cases that discuss government liability based on statutes, ordinances, or regulations— there are many. However, *all* of the cases cited in the concurrence use permissive terms when describing the government's duty: "'[l]iability *can* be founded upon a municipal

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

code,'" "'we advised legislative bodies that, *when they impose a duty* on public officials as a whole, no duty in tort is owed to a particular individual,'" "'we acknowledged that the law *may* impose a duty to perform a mandated act for the benefit of particular persons or class of persons.'" *Id.* at 889 (Chambers, J., concurring) (emphasis added) (internal quotation marks omitted) (quoting *Halvorson v. Dahl*, 89 Wn.2d 673, 676, 574 P.2d 1190 (1978); *Baerlein v. State*, 92 Wn.2d 229, 232, 595 P.2d 930 (1979); *Hartley v. State*, 103 Wn.2d 768, 782, 698 P.2d 77 (1985)). The concurrence cites other cases that simply acknowledge that statutes, ordinances, and regulations *can* impose duties on public officials that are owed to the public generally. *Id.* at 889-90 (quoting *Meaney v. Dodd*, 111 Wn.2d 174, 178, 759 P.2d 455 (1988); *Honcoop v. State*, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988); *Beal v. City of Seattle*, 134 Wn.2d 769, 784-85, 954 P.2d 237 (1998)). Clearly absent is any case mandating that the public duty doctrine applies *only* to duties imposed by statute, ordinance, or regulation.

In the next leg of this twisted road, the majority begins to build on the shaky foundation constructed in the *Munich* concurrence in decisions like *Ehrhart*, where we said that the public duty doctrine "'comes into play when [some] special governmental obligations are imposed by statute.'" 195 Wn.2d at 399 (quoting *Beltran-Serrano*, 193 Wn.2d at 549 (citing *Munich*, 175 Wn.2d at 886)). These statements are fine as far as they go, but, as with the cases the *Munich* concurrence relied on, the court did not limit the application of the public duty doctrine to the narrow statutory or regulatory context. Without critically examining its provenance, the majority uses *Munich* to go further. It

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

says, now conclusively, that the *Munich* concurrence is the law. According to the majority, this is perfectly acceptable because five justices agreed with Justice Chambers' concurrence in *Munich* and that is enough to make it binding precedent. *See* majority at 8. But even the *Munich* concurrence admitted that we have analyzed statutory *and* common law duties under the public duty doctrine. *Munich*, 175 Wn.2d at 891 (Chambers, J., concurring); *see Taggart v. State*, 118 Wn.2d 195, 217-19, 822 P.2d 243 (1992); *Bishop v. Miche*, 137 Wn.2d 518, 530, 973 P.2d 465 (1999); *Aba Sheikh v. Choe*, 156 Wn.2d 441, 448-54, 128 P.3d 574 (2006).

The majority seems disinterested in engaging in a critical analysis on this point and accepts as final a pronouncement in a concurrence—a concurrence that is internally inconsistent. In my view, our job is not to assume a point of law or to decline to thoroughly question a "holding" taken from a concurrence. Instead, we should consider that conclusion deeply and decide openly whether it is indeed already settled or if we must subject it to further scrutiny—scrutiny that was absent when the concurrence was written. The court has not done so here.[2]

---

[2] Because concurrences—rather than majority opinions—play a central role in this case, it is critical that we examine those opinions' analyses and conclusions, particularly when the concurrences are contrary to other majority opinions and are internally inconsistent as I have attempted to explain (in short, *Munich* is internally inconsistent and built on reasoning from a three-vote concurrence in *Cummins*). In my view, we do a disservice to our own analytical process as well as to the public at large when we decline to show our work. Thus, I would closely examine the *Munich* concurrence here instead of doubling down as the majority does by providing additional cases that simply adopted *Munich* without such consideration. *See* majority at 8, 11. Repetition is not a substitute for analysis.

6

No. 100100-2
Madsen, J., dissenting

Applying the doctrine outside the statutory context, no doubt the majority will protest, would restore sovereign immunity that was abolished with the enactment of RCW 4.92.090 and RCW 4.96.010. *See Beltran-Serrano*, 193 Wn.2d at 549-50 (citing *Munich*, 175 Wn.2d at 892 (Chambers, J., concurring)). Yet this was not a concern in prior cases analyzing the public duty doctrine when both statutory *and common law* duties were implicated.

If the majority is no longer convinced that these past cases (or indeed the public duty doctrine itself) withstand careful analysis or conflict with the abolition of sovereign immunity, the proper course of action is to correct our erroneous interpretation and abandon the public duty doctrine. *See State v. Schierman*, 192 Wn.2d 577, 764, 438 P.3d 1063 (2018) (Yu, J., concurring in part and dissenting in part) (stating that we will overturn rules announced by past cases when they are incorrect and harmful).

3. *Cummins*, not the concurrence in *Munich*, controls this case

Ironically, while the majority blithely accepts the *Munich* concurrence as "the law," it goes to great lengths to distinguish and limit this court's *precedential majority* decision in *Cummins*. Majority at 12-15. In that case, Leon Cummins died of a heart attack despite calling 911, providing his address, and stating he was suffering a medical emergency but ending the call before giving any other information. *Cummins*, 156 Wn.2d at 848-49. The 911 operator was concerned the call was a prank and dispatched a police officer rather than medical services; the officer located a young man in the area who claimed he made the call. After Cummins' wife returned home and found her

7

No. 100100-2
Madsen, J., dissenting

husband dead, she brought a wrongful death claim against the county and city in which they lived, alleging negligence on behalf of the 911 dispatcher and the police officer investigating the call. *Id.* at 849-50. The issues before this court were whether to relax the "express assurance" requirement for EMS calls and whether lower courts erred in not finding a special relationship between Lewis County and Leon Cummins when he dialed 911. *Id*. at 851-52.

Based on *Cummins*' facts and procedural history, the majority rejects the City of Seattle's reliance on the case. Majority at 12-15. I do not find *Cummins* is so easily set aside. Because only the express assurance and special relationship exceptions were at issue before this court, the majority notes that the parties "assumed that the public duty doctrine applied." Majority at 14. The parties did more than assume, however; Cummins' wife appealed the trial court's dismissal of her claims *based on the public duty doctrine* and the Court of Appeals affirmed. *See Cummins v. Lewis County*, 124 Wn. App. 247, 251, 257, 98 P.3d 822 (2004). While this court did not expressly hold that the public duty doctrine applied, in light of the fact that the Court of Appeals affirmed the trial court's ruling *based on the doctrine*, this holding inhered in our decision. *See State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008) ("[O]nce there is an appellate court ruling, its holding must be followed in all of the subsequent stages of the same litigation." (citing *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005))).

Moreover, like the present case, no statutory duty was identified; and, our decision in *Cummins* held the county was carrying out responsibilities it owed to the general

8

No. 100100-2
Madsen, J., dissenting

public when fielding Cummins' 911 call, concluding "that no common law duty was owed to Mr. Cummins individually or as a member of a particular class under these circumstances."  156 Wn.2d at 861.

Though the facts of *Cummins* and the present case are different in some respects, the relevant details are the same:  a resident calls 911 seeking emergency medical aid, a catastrophic injury occurs, and negligence claims are brought against the local governments providing emergency services.  While Leon Cummins' wife did not allege a common law duty, this court nevertheless concluded a common law duty was *not* individually owed to Cummins.  *Id.*  Here, the Norgs did claim the existence of a common law duty of reasonable care, but under the public duty doctrine, this is a duty to the public at large as in *Cummins*.

I am unpersuaded by the majority's numerous, but ultimately picayune, distinctions between these cases.  In my view, the fundamental holding of *Cummins* applies here and supports the city's contention:  the public duty doctrine applies to municipally provided emergency medical assistance.[3]

While I would hold that the city of Seattle owed a duty to the public at large under the public duty doctrine, I do not believe the doctrine necessarily bars the Norgs' claim. Numerous exceptions exist.  If any one of these exceptions applies, the government is as

---

[3] The interpretation of *Cummins* is also critically important because Justice Chambers' five-vote concurrence in *Munich* did not intend to overrule or reexamine previous cases.  175 Wn.2d at 894 (stating that Justice Chambers would not "change any of [this court's] precedents" and "would not reexamine any case where we have held [that] the government does or does not owe a duty").  I would reaffirm *Cummins* and hold public duty doctrine applicable in the context of EMS.

9

No. 100100-2
Madsen, J., dissenting

a matter of law held to owe a duty to the plaintiff. *See Munich*, 175 Wn.2d at 879. Here, the Court of Appeals took the public duty doctrine off the table—we should reverse.

4. <u>EMS services are *not* a proprietary function</u>

In addition to certain exceptions, we have not applied the public duty doctrine when local government engages in a proprietary function. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987).

The majority makes the surprising conclusion that "'emergency medical assistance is not a unique function of government,'" and as such, municipal EMS providers are subject to civil suits in negligence as are private entities. Majority at 17-18 (quoting *Cummins*, 156 Wn.2d at 872). This is surprising because the majority relies entirely on the *Cummins* concurrence for this proposition. *See id*. at 18 (citing *Cummins*, 156 Wn.2d at 872). But the *Cummins* majority garnered five votes; the concurrence did not. Only three justices signed that opinion.[4]

The public duty doctrine applies when a public entity is performing a governmental function. *Bailey*, 108 Wn.2d at 268. If an entity is performing a proprietary function, it is held to the same duty of care as a private entity engaging in the

---

[4] The majority states that because the parties did not brief the issue of governmental versus proprietary functions, we should not address it. Majority at 18 n.4. Yet the majority does address it. Repeating the three-vote concurrence in *Cummins*, the majority holds that "'emergency medical assistance is *not a unique function of government*.'" Majority at 18 (quoting *Cummins*, 156 Wn.2d at 872) (emphasis added). In this, the majority repeats the same analytical flaw underlying the whole of this majority: it adopts the analyses and conclusions of concurrences without critical examination. Worse, the majority addresses the governmental/proprietary nature of EMS by invoking the statement in the concurrence in *Cummins* that it is *not* a governmental function and essentially overrules the *Cummins* majority.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

same activity. *Stiefel v. City of Kent*, 132 Wn. App. 523, 529, 132 P.3d 1111 (2006) (citing *Dorsch v. City of Tacoma*, 92 Wn. App. 131, 135, 960 P.2d 489 (1998)). A government acts in a proprietary capacity when it engages in a business-like venture rather than in a governmental capacity. *Hoffer v. State*, 110 Wn.2d 415, 422, 755 P.2d 781 (1988). "The principal test in distinguishing governmental functions from proprietary functions is whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity." *Okeson v. City of Seattle*, 150 Wn.2d 540, 550, 78 P.3d 1279 (2003). Governmental functions are normally those that involve ensuring compliance with state law, issuing permits, and performing activities for the public health, safety, and welfare. *Sunshine Heifers, LLC v. Dep't of Agric.*, 188 Wn. App. 960, 967-68, 355 P.3d 1204 (2015) (citing cases); *see also Fabre v. Town of Ruston*, 180 Wn. App. 150, 159, 321 P.3d 1208 (2014). A proprietary function tends to involve a city performing a service that might as well be provided by a private corporation, particularly when it collects revenue from it. WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 131, at 980 (4th ed. 1971).

In yet another fork of the twisted road followed by the majority, it relies on another unsupported statement in yet another concurrence—that EMS is "fundamentally different from a request for police assistance," which is not "unique to government." *Cummins*, 156 Wn.2d at 872 (Chambers, J., concurring). I disagree with this assertion— and importantly, a majority of this court has not said this assertion is correct. Functions of government and whether they qualify as unique are not static conventions.

11

No. 100100-2
Madsen, J., dissenting

Government services evolve as society's needs evolve. Further, where a government entity acts in both governmental and proprietary roles, application of the public duty doctrine can depend on the function being challenged. *Stiefel*, 132 Wn. App. at 530 (citing *Goggin v. City of Seattle*, 48 Wn.2d 894, 897, 297 P.2d 602 (1956) (construction and maintenance of city streets is a proprietary function; supervision and control of streets is a governmental function)).

The concurrence in *Cummins* (three votes) asserted that RCW 35.21.766 is evidence that EMS is primarily a function of private business. *Cummins*, 156 Wn.2d at 872 (Chambers, J., concurring). I read the provision differently. RCW 35.21.766(2) provides that when a private ambulance service is found inadequate, the legislative authority of a city or town may establish an ambulance service operated as *a public utility*. The legislature found expressly that

> ambulance and emergency medical services are essential services and the availability of these services is vital to preserving and promoting the health, safety, and welfare of people in local communities throughout the state. All persons, businesses, and industries benefit from the availability of ambulance and emergency medical services, and survival rates can be increased when these services are available, adequately funded, and appropriately regulated.

LAWS OF 2005, ch. 482, § 1.

Performing ambulance and EMS is, as Washington lawmakers recognized, essential for the health, safety, and welfare of the people—the embodiment of a governmental function. *See Sunshine Heifer*, 188 Wn. App. at 967-68.[5] The provision of

---

[5] I also note that "the creation, maintenance, and operation of a fire department and all reasonably incident duties are a governmental function." *Stiefel*, 132 Wn. App. at 529-30 (citing

12

No. 100100-2
Madsen, J., dissenting

EMS may also be provided by a private corporation, but unlike a for-profit company, a local government collects no specific revenue for the service that it provides for the common good for all residents. *See Okeson*, 150 Wn.2d at 550; PROSSER, *supra*, at 980.

In sum, I would hold as matter of law that the city of Seattle may argue the public duty doctrine in response to the Norgs' negligence claim. This does not, however, bar the Norgs from asserting exceptions to the doctrine. I would reverse the Court of Appeals and remand the case to the trial court to determine whether any such exceptions can be satisfied. With these considerations in mind, I respectfully dissent.

_____
Madsen, J.

_____
Johnson, J.

_____
Owens, J.

_____
Toynbee, J.P.T.

---

*Lakoduk v. Cruger*, 47 Wn.2d 286, 289, 287 P.2d 338 (1955) (firefighter acting in governmental capacity when responding to call for first aid assistance); *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 777, 30 P.3d 1261 (2001) (plurality opinion) (public duty doctrine provides immunity to firefighters in the performance of their duties)). Because the Seattle Fire Department operates and staffs Medic One, it may qualify as a governmental function as a reasonably incident duty for the operation of a fire department. *See id.*; *see also Medic One: About Us*, SEATTLE FIRE DEP'T, https://www.seattle.gov/fire/about-us/about-the-department/operations/medic-one [https://perma.cc/WJ67-R54R].

13